UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GINA MARIN, on behalf of herself and others similarly situated, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 24 Civ. 1340 (SLC) |
| -v- | **OPINION & ORDER** |
| 310 BOWERY GROUP LLC, et al., | |
| Defendants. | |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Gina Marin ("Marin" or "Lead Plaintiff"), on behalf of herself and others similarly situated, brought this putative collective and class action against Defendants 310 Bowery Group, LLC d/b/a 310 Bowery Bar, Epstein's Bar, LLC d/b/a Stanton Bar, and Richard Aurigemma (collectively, "Defendants"). (ECF No. 1). Marin alleges that Defendants, by taking an improper tip credit, failed to pay her and other service employees at Defendants' bars proper minimum wages, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and New York Labor Law § 650 et seq. (Id. ¶¶ 25-49). Marin also alleges that Defendants failed to provide wage notices and wage statements in violation of the New York Wage Theft Prevention Act, N.Y. Lab. L. §§ 195, 198 (the "WTPA"). (Id. ¶¶ 50-52).

After the parties reached a settlement agreement in principle and consented to Magistrate Judge jurisdiction for all purposes (ECF Nos. 80; 88), now before the Court is Marin's Motion for Preliminary Approval of Class Action Settlement. (ECF No. 89 (the "Motion")). Marin seeks: (i) preliminary approval of the parties' settlement agreement (the "Agreement");

(ii) conditional certification of a settlement class under Federal Rule of Civil Procedure 23(b)(3) and 29 U.S.C. § 216(b); (iii) approval and permission to distribute a notice to the class (the "Notice"); (iv) appointment of a settlement administrator; and (v) scheduling of a final approval hearing concerning the Agreement (the "Fairness Hearing").

     For the reasons set forth below, the Motion is GRANTED.

## II. <u>BACKGROUND</u>

### A. <u>Factual Background</u>

     Defendants own 310 Bowery Bar and 82 Stanton Bar (the "Bars"), in Lower Manhattan. (ECF No. 90 ¶ 4). From March 2022 to February 2024, Marin worked as a server at the Bars. (<u>Id.</u> ¶ 5). Marin alleges that Defendants paid her and other service employees less than the required minimum wage by improperly invoking the tip credit without giving her prior written notice. (ECF Nos. 1 ¶¶ 15, 25-34; 90 ¶¶ 6, 9). Marin also alleges that Defendants failed to provide her and other service employees with required wage notices and statements. (ECF Nos. 1 ¶¶ 51-52; 90 ¶ 11).

### B. <u>Procedural Background</u>

     On February 22, 2024, Marin filed the complaint on behalf of herself as well as a putative class and collective under the FLSA. (ECF No. 1). At all times in this action, Marin has been represented by the law firm of Joseph & Kirschenbaum LLP (the "Firm"), which represents employees in wage and hour and employment discrimination matters and has been approved as class counsel in federal wage and hour class actions by several courts in the Second Circuit. (ECF Nos. 1; 90 ¶¶ 1, 30-38).

On July 16, 2024, the parties stipulated to the conditional certification under FLSA § 216(b) of a collective comprised of "all servers, bartenders, barbacks, runners, and bussers employed by Defendants at 310 Bowery Bar on or after" February 22, 2021.  (ECF No. 39 (the "FLSA Collective Members")).  A notice of this action was then sent to the FLSA Collective Members, six of whom opted to join as plaintiffs (the "Opt-In Plaintiffs")).  (ECF Nos. 39 at 5-9; 55; 60-63; 66; 68; 90 ¶ 8).  Defendants moved to dismiss the WTPA claims, which Marin opposed, and the parties undertook fact discovery.  (ECF Nos. 46-49; 71-72; 90 ¶¶ 13-19).

With the assistance of a private mediator over several weeks of negotiations, on January 13, 2025, the parties reached an agreement in principle to resolve the claims of "all tipped employees of [the Bars], including servers, bussers, and bartenders employed at those bars in Manhattan" between February 22, 2018 and May 8, 2024 in the amount of $750,000. (ECF Nos. 90 ¶ 21; 90-1 ¶¶ 1.10, 1.12, 1.20, 1.26).

On March 4, 2025, the parties consented to Magistrate Judge jurisdiction for all purposes and Marin filed the Motion.  (ECF Nos. 88-91).  On March 21, 2025, the Court held a telephone conference with counsel regarding the Motion and the Agreement.  (ECF No. 92; <u>see</u> minute entry for proceedings held on March 21, 2025 (the "Conference")).

### C. <u>Terms of the Agreement</u>

#### 1. <u>The Settlement Class</u>

The Agreement defines Class Members to include Marin, the Opt-in Plaintiffs, "and all members of the FLSA Class and NYLL Class."  (ECF No. 90-1 ¶ 1.10).  The FLSA Class is in turn defined "as all workers who were employed at [the Bars] in New York, NY in Covered Positions between February 22, 2018 and May 8, 2024 and who endorse their settlement checks and/or

have filed a valid consent to join form . . . prior to the Bar Date."[1]  (ECF No. 90-1 ¶ 1.20).  The

NYLL Class similarly refers to workers in Covered Positions during the same period as the FLSA

Class "who do not opt-out of the New York Labor Law claims" in this action.  (ECF No. 90-1 ¶ 1.26).

Finally, "Covered Positions" refers to "all tipped employees of [the Bars], including servers,

bussers, and bartenders employed in those bars in Manhattan."  (ECF No. 90-1 ¶ 1.12).  The

Notice refers alternatively to the "Class" and the "settlement class," neither of which is a defined

term in the Agreement.  (Compare ECF No. 90-1 with ECF No. 90-2 ¶ 1).

As we decipher the Agreement—and after consultation with the parties during the

Conference—we define the "Settlement Class" as:

> all tipped employees, including servers, bussers, and bartenders, of the Bars in
> Manhattan from February 22, 2018 and May 8, 2024 who do not opt out of the
> New York Labor Law claims in this action.

(ECF No. 90-1 ¶¶ 1.4, 1.10, 1.12, 1.20, 1.26).  We define the "Class Period" as February 22, 2018

to May 8, 2024.

### 2.  Settlement Amount, Claims Administrator, and Releases

Under the Agreement, in exchange for Defendants' payment of the "Maximum

Settlement Amount" of $750,000, Marin and all Class Members who have not opted out release

all claims for any wage and hour violations that may have occurred during the Class Period arising

from or relating to their employment with Defendants under New York state or any local law.

(ECF No. 90-1 ¶¶ 1.23, 3.1, 4.1).  Authorized Claimants—i.e., Marin and any Class Member who

timely submits a claim form—also release all FLSA claims for any wage and hour violations that

---

[1] The Bar Date is 60 days from the mailing of the Notice to Class Members.  (ECF No. 90-1 ¶ 1.4).

may have occurred during the Class Period arising from or relating to their employment with Defendants.  (ECF No. 90-1 ¶¶ 1.3, 4.2).

The Maximum Settlement Amount will be placed in a "Qualified Settlement Fund," which a Claims Administrator—tentatively, XPand Legal—will control.  (ECF No. 90-1 ¶¶ 1.6, 1.32). From the Qualified Settlement Fund, the Claims Administrator will first pay attorneys' fees and costs (in an amount to be determined but no more than one-third of the Maximum Settlement Amount), a $10,000 service award to Marin, and settlement administration costs not greater than $25,000.  (ECF No. 90-1 ¶¶ 3.1, 3.2, 3.3).  After those amounts are paid, the balance will be the "Net Settlement Fund[,]" from which the Claims Administrator will pay each Authorized Claimant their proportionate share of recovery pursuant to a formula set forth in the Agreement.  (ECF No. 90-1 ¶¶ 1.24, 3.4).

The Agreement specifies how Defendants will fund the Qualified Settlement Fund.  (ECF No. 90-1 ¶ 3.1(B)).  If the Class Members claim 30% or less of the Net Settlement Fund, Defendants shall make one installment payment within ten (10) days of the Effective Date of the Agreement.  (ECF No. 90-1 ¶ 3.1(B)(1)).  If the Class Members claim more than 30% of the Net Settlement Fund, however, Defendants will make an installment payment of 50% within seven (7) days of the Effective Date, with the remaining 50% balance paid no later than twelve (12) months after the Effective Date.  (ECF No. 90-1 ¶ 3.1(B)(2)).  This provision implicitly recognizes that Defendants' "finances are uncertain."  (ECF No. 91 at 27).  The Agreement also contains a procedure to follow if Defendants default on any payments.  (ECF No. 90-1 ¶ 3.1(C)).

### 3. Notice and Opportunities to Opt-Out and Object

The Notice informs members of the Settlement Class of their opportunity to object or opt out, appear at the Fairness Hearing, and submit a claim form. (ECF Nos. 90-1 ¶ 2.4; 90-2). The Agreement contemplates that, within 28 days of the Court's granting of the Motion, the Claims Administrator will send the Notice and accompanying claim forms to members of the Settlement Class. (ECF No. 90-1 ¶¶ 2.3(B)(1), 2.5(A), (B) (the "Mailing Date")). Class members will have 60 days from the Mailing Date to return a completed claim form to the Claims Administrator; only those class members who do so will be deemed "Authorized Claimants."[2] (ECF No. 90-1 ¶¶ 1.3, 1.4, 2.5(D), 2.6(B), 2.6(D)).

Class members who choose to opt out must mail to the Claims Administrator by the Bar Date a written, signed statement of their intention to opt out of the Agreement. (ECF No. 90-1 ¶¶ 2.6(A), (B), (C)). Any class member who does not submit an opt-out statement pursuant to that procedure "will be deemed to have accepted the settlement and the terms of th[e] Agreement, will be bound by the Judgment in this case, and [will] have any Released Class Claims released and dismissed with prejudice regardless of whether [they] timely complete[d] and return[ed] a Claim Form." (ECF No. 90 ¶ 2.6(D)).

The Court will hold the Fairness Hearing to hear any objections to the Agreement, consider applications for attorneys' fees and costs, and determine whether final approval of the Agreement is warranted. (ECF No. 90-1 ¶¶ 1.17, 2,7, 2.8, 3.2). Class Members who wish to object to the Agreement at the Fairness Hearing must first mail to the Claims Administrator by the Bar Date a statement including "all reasons for the objection"; the Court will not consider any

---

[2] For clarity, as explained above, 60 days from the Mailing Date is the Bar Date. (See n.2, supra).

objections not timely presented in writing.  (ECF No. 90-1 ¶ 2.7(A)).  If the objector wishes to appear and be heard at the Fairness Hearing, they must indicate that intention in their objection statement.  (ECF No. 90-1 ¶ 2.7(B)).  The parties may respond to any objection at least three days before the Fairness Hearing.  (ECF No. 90-1 ¶ 2.7(C)).

### 4.  Other Provisions

The Agreement is governed by New York law and contemplates that the Court will retain jurisdiction over its implementation.  (ECF No. 90-1 ¶¶ 5.7, 5.8).  The Agreement permits the severability of any provision deemed to be void, voidable, unlawful, or unenforceable and the enforcement of the remaining provisions.  (Id. ¶ 5.9).  Within ten days of preliminary approval of the Agreement, Defendants' counsel shall provide notices required by the Class Action Fairness Act and provide copies to Plaintiffs' counsel.  (Id. ¶ 5.15).

### III. DISCUSSION

## A.  Legal Standards

### 1.  Federal Rule of Civil Procedure 23

A party seeking class certification under Federal Rule of Civil Procedure 23 "must clear two hurdles."  Martínek v. AmTrust Fin'l Servs., No. 19 Civ. 8030 (KPF), 2022 WL 326320, at *3 (S.D.N.Y. Feb. 3, 2022).[3]  First, Rule 23(a) requires the moving parties to demonstrate that: "[i] the class is so numerous that joinder of all members is impracticable; [ii] there are questions of law or fact common to the class; [iii] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [iv] the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  In addition to the four Rule 23(a)

---

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

prerequisites, "the Second Circuit also recognizes an implicit 'ascertainability' requirement, which commands that the proposed class be defined using objective criteria that establish a membership with definite boundaries." Martínek, 2022 WL 326320, at *3.  Second, if the proposed class meets the Rule 23(a) prerequisites, the parties seeking certification must then show that "the action can be maintained under Rule 23(b)(1), (2), or (3)." In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 238 (2d Cir. 2012).  Plaintiffs seeking certification under Rule 23(b)(3), as is the case here (ECF No. 91 at 19-20), "must establish that (i) 'questions of law or fact common to class members predominate over any questions affecting only individual members' and (ii) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Martínek, 2022 WL 326320, at *4 (quoting Fed. R. Civ. P. 23(b)(3)).

A settlement of a class action under Federal Rule of Civil Procedure 23 requires court approval.  Fed. R. Civ. P. 23(e).  Approval of a class action settlement generally involves a two-step process, the first of which is preliminary approval, which "simply allows notice to issue to the class and for Class Members to object to or opt out of the settlement." Yuzary v. HSBC Bank USA, N.A., No. 12 Civ. 3693 (PGG), 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013); see also Dover v. British Airways, PLC (UK), 323 F. Supp. 3d 338, 348 (E.D.N.Y. 2018) (describing the two-step process).  "After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input[,]" and determine whether final approval is appropriate. Yuzary, 2013 WL 1832181, at *1 (citing Clark v. Ecolab, Inc., No. 07 Civ. 8623 (PAC) et al., 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)); see Fed. R. Civ. P. 23(e)(2) (requiring a fairness hearing at which members of the class may be heard to determine if the proposed settlement is "fair, reasonable, and adequate").

"Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties.'" Chang v. Philips Bryant Park LLC, No. 17 Civ. 8816 (LTS) (SLC), 2019 WL 8105999, at *7 (S.D.N.Y. Oct. 23, 2019), adopted by 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020). In determining whether to grant preliminary approval, "a court need only find probable cause to submit the settlement proposal to class members and hold a full-scale hearing as to its fairness." Solis v. OrthoNet LLC, No. 19 Civ. 4678 (VSB), 2021 WL 1904984, at *2 (S.D.N.Y. May 11, 2021).

Under Rule 23(e), in considering a motion for preliminary approval of a class settlement, courts consider whether "giving notice is justified by the parties' showing that the court will likely be able to approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii). Factors relevant to the decision to approve a proposed class action settlement include: "(1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(2)). In addition to the four Rule 23(e)(2) factors, courts within the Second Circuit also consider the nine factors established in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. at 463.[4]  The Grinnell factors not otherwise covered by Rule 23(e)(2)(C) are factors (2), (3), (7), (8), and (9).  See Amigon v. Safeway Constr. Enters., LLC, No. 20 Civ. 5222 (PK), 2024 5040436, at *6 (E.D.N.Y. Dec. 9, 2024).

Approval of a proposed class action settlement is a matter of the Court's discretion.  See Olibares v. MK Cuisine Global LLC, No. 21 Civ. 100694 (VSB), 2023 WL 5702595, at *2 (S.D.N.Y. Sept. 5, 2023) (citing Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995)).  In exercising its discretion, the Court may give weight to the fact that the parties have chosen to settle because "[t]he parties and their counsel are in a unique position to assess the potential risks of litigation[.]"  Id.

### 2.  **FLSA Settlement Approval**

The FLSA permits employees to pursue collective actions to recover unpaid wages where the employees are "similarly situated" and file a written consent to become a party.  29 U.S.C. § 216(b).  A court may "implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010).  Participation in a FLSA collective action requires an employee to "'opt-in,' meaning the employee must consent in writing to join the suit and that consent must be filed with the court."  Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).  Thus, "FLSA allows an employee to bring a claim on behalf of other similarly-situated employees, but the other employees do not become plaintiffs in the action unless and

---

[4] The Second Circuit abrogated Grinnell on other grounds in Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000).

until they consent in writing." Douglas v. Allied Universal Sec. Servs., 371 F. Supp. 3d 78, 85-86 (E.D.N.Y. 2019).

Parties may not privately settle and dismiss with prejudice FLSA claims absent approval of the district court or the United States Department of Labor. See Samake v. Thunder Lube, Inc., 24 F.4th 804, 807 (2d Cir. 2022); Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 200 (2d Cir. 2015). Absent Department of Labor approval, the parties must satisfy the district court that their settlement is "fair and reasonable." Velazquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). In determining whether a FLSA settlement is fair and reasonable, district courts

> consider the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). This standard for approval of a FLSA settlement "is lower than for a class action under Rule 23[,]" such that "[i]f the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

In addition, if the class settlement contemplates an award of attorneys' fees and costs, the district court will evaluate the reasonableness of those fees and costs, the request for which must be supported by adequate documentation. Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020). If a district court concludes that a proposed FLSA settlement is unreasonable in whole or in part, "it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." Id. at 597.

### 3. Interaction Between Rule 23 and FLSA Settlement Approval

As noted above, Rule 23 allows class members to opt <u>out</u> of a proposed class-wide settlement, while § 216(b) of the FLSA requires employees to opt <u>in</u> to any FLSA collective action to be bound by the judgment or benefit from it. <u>Gjurovich v. Emmanuel's Marketplace, Inc.</u>, 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003). Thus, "[t]he opt-out requirement of modern Rule 23(b)(3) directly conflicts with the express opt-in requirement of § 216(b)." <u>Scott v. Chipotle Mexican Grill, Inc.</u>, 954 F.3d 502, 519 (2d Cir. 2020). Because FLSA and NYLL claims often derive from the same set of facts, employees "frequently bring both types of claims together in a single action." <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 244 (2d Cir. 2011). In these circumstances, plaintiffs may "pursue the FLSA claims as a collective action" under § 216(b) and the NYLL claims as a class action under Rule 23 in the same action, referred to as a "hybrid" action. <u>See</u> <u>Febus v. Guardian First Funding Grp., LLC</u>, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012).

### B. Application

#### 1. Preliminary Approval of the Agreement & Provisional Certification of Settlement Class

Considering the procedural and substantive factors in Rules 23(a), 23(b)(3), and 23(e)(2) as well as the <u>Grinnell</u> and <u>Wolinsky</u> factors, the Court grants both preliminary approval of the Agreement as fair, reasonable, and adequate as well as provisional certification of the Settlement Class.

##### a. Rule 23(a)

The Settlement Class satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. <u>See</u> Fed. R. Civ. P. 23(a). As to numerosity, the parties

estimate that the Settlement Class consists of at least 200 members (ECF No. 90 ¶ 23), which is too numerous for joinder to be practicable.  See Shahriar, 659 F.3d at 252 (noting that numerosity is presumed where a putative class has 40 or more members).  As to commonality, the primary issues in this action—"whether Defendants paid Class Members the tip credit minimum wage without satisfying the requirements of New York law, whether Defendants included managers in their tip pools, and whether Defendants provided wage notices and wage statements that complied with the NYLL" (ECF No. 91 at 18)—are common to the Settlement Class.  As to typicality, each Class Member's claim arises from the same course of events, i.e., Defendants' compensation polices for service employees at the Bars.  (ECF Nos. 1; 39).  See Barrows v. Becerra, 24 F.4th 116, 131 (2d Cir. 2022).  As to adequacy, Marin has "vigorously represented" the interests of the Settlement Class and "ha[s] no known interests antagonistic to the interests of other class members."  Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).  (ECF No. 90 ¶ 29).  In addition, the Firm has extensive experience representing employees in federal wage and hour class actions in the Second Circuit courts.  (ECF No. 90 ¶¶ 30-38).

Accordingly, all four elements of Rule 23(a) are met.

### b.  Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Both requirements are met here.  Questions common to all Class Members—including whether Defendants maintained improper compensation practices for service employees and failed to provide adequate wage notices and statements—are subject to generalized proof and

predominate over any potential individual issues.  See In re US Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013).  In addition, a class settlement is a superior method for the fair and efficient adjudication of the claims of the Class Members, who have limited financial resources to prosecute individual actions.  See Lora v. To-Rise, LLC, 452 F. Supp. 3d 5, 10 (E.D.N.Y. 2019) ("Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.").

### c.  Ascertainability

The implied requirement of ascertainability demands "only that a class be defined using objective criteria that establish a membership with definite boundaries."  In re Petrobras Secs. Litig., 862 F.3d 259, 264 (2d Cir. 2017).  The Settlement Class is easily ascertainable given the parties' representation that, based on Defendants' employment records, there are at least 200 Class Members.  (ECF No. 90 ¶¶ 14, 15, 17, 23).  See Amigon, 2024 WL 5040436, at *8 (finding settlement class was ascertainable where class members were identifiable from defendants' records).

### d.  Rule 23(e)(2)

#### i.  Adequate representation by class representatives and class counsel (Fed. R. Civ. P. 23(e)(2)(A))

As found above, Marin is an adequate class representative and her interests are not antagonistic to the other Class Members.  (See § III.B.1.a., supra).  The Firm is also "highly experienced in class action wage and hour litigation and [has] used that experience to obtain an

excellent settlement for the Class." (ECF Nos. 90 ¶¶ 36-46; 91 at 23). Thus, this factor weighs in favor of preliminary approval of the Agreement and naming the Firm as "Class Counsel."

### ii. Arm's length negotiation (Fed. R. Civ. P. 23(e)(2)(B))

Courts apply a "presumption of fairness" to a class settlement "reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class action" litigation. In re GSE Bonds Antitrust Litig., 414 F. Supp. 3d at 692. The parties, who were each represented by experienced, capable counsel in wage and hour litigation, entered into the Agreement after participating in a mediation and follow-up negotiations with an experienced mediator. (ECF No. 90 ¶¶ 20-21). This factor therefore also weighs in favor of preliminary approval.

### iii. Adequate relief for the Settlement Class (Fed. R. Civ. P. 23(e)(2)(C))

In determining whether the Agreement provides adequate relief to the Settlement Class, the Court considers: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Only the first three factors are pertinent here.

The first factor, the "costs, risks, and delay of trial and appeal[,]" "subsumes several Grinnell factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." Mikhlin v. Oasmia Pharm. AB, No. 19 Civ. 4349 (NGG) (RER), 2021 WL 1259559, at

*5 (E.D.N.Y. Jan. 6, 2021).  Courts favor a settlement that "results in substantial and tangible present recovery, without the attendant risk and delay of trial." Sykes v. Harris, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016).  "Given the complexity of any class action lawsuit . . . it is reasonable to assume that absent [a s]ettlement, continued litigation would have required extensive time and expense." Garland v. Cohen & Krassner, No. 08 Civ. 4626 (KAM) (RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011).  "In considering the risks of establishing liability, the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." Mikhlin, 2021 WL 1259559, at *5.

Here, the Complaint asserts claims under federal and state statutes, liability for which Defendants have continuously disputed.  (ECF Nos. 1; 46; 90 ¶¶ 7, 9-11; 90-1 at 3).  Although the parties had exchanged written discovery requests, in response to which Defendants produced extensive payroll data and other information, the parties had not yet embarked on depositions. (ECF No. 90 ¶¶ 16-17, 19).  The outcome of Defendants' motion to dismiss was uncertain, Defendants planned to oppose class certification, and further litigation "would involve additional expense and delay, including completing party depositions and fact discovery, Rule 23 motion practice and summary judgment motions."  (ECF No. 91 at 24, 27; see ECF No. 46).  Disputes requiring judicial resolution were inevitable throughout those proceedings, and trial would have involved numerous witnesses—including all seven Plaintiffs—and complex legal and factual issues.  (ECF Nos. 90 at 24; 90 ¶ 8).  Given these challenges, Marin acknowledges that the Settlement Class faced "substantial risks in obtaining the[] maximum possible recovery[,]" estimated to be $4.3 million, of which the Settlement Amount represents 100% of the Class Members' maximum unpaid wages and approximately 17% of their total best possible recovery.

(ECF Nos. 90 ¶¶ 21-22, 25-27).  This recovery is within the range of other wage and hour settlements approved in the Second Circuit.  See, e.g., Pickard v. OnSite Facility Serv., LLC, No. 22 Civ. 207 (AMN) (ML), 2023 WL 7019256, at *8 (N.D.N.Y. Oct. 25, 2023) (approving wage and hour class action settlement that represented 16% of the class's maximum recovery).  The Agreement therefore represents a favorable outcome, particularly when balancing the parties' claims and defenses and the risks and uncertainties of continued litigation.  The first Rule 23(e)(C)(2) factor, and Grinnell factors (1), (4), (5), (6), (8), and (9) therefore weigh in favor of settlement.

In evaluating the second Rule 23(e)(2)(C) factor, we must consider the effectiveness of the parties "proposed method of distributing relief to the class, including the method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  "A plan for allocating settlement funds need not be perfect," and "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  Mikhlin, 2021 WL 129559, at *6. The Agreement provides for the creation of the Net Settlement Fund, from which the Claims Administrator will (i) determine each Class Member's proportionate share using a formula based on hours worked as reflected in Defendants' payroll records and the claim forms and (ii) pay each Authorized Claimant by check.  (ECF No. 90-1 ¶¶ 1.24, 3.4; see ECF No. 91 at 29).  The Proposed Notice (accompanied by an explanatory cover letter) describes the terms of the Agreement and provides clear explanations of how to file a claim form, opt out, or object.  (ECF No. 90-1 at 25-31).  The distribution plan appears fair and equitable.  The second Rule 23(e)(2)(C) factor thus also weighs in favor of preliminary approval.

The third Rule 23(e)(2)(C) factor contemplates that, before final approval, the Court "will review Plaintiffs' application for attorneys' fees, taking into account the interests of the class."

Hart v. BHH, LLC, 334 F.R.D. 74, 79 (S.D.N.Y. 2020). "One method for calculating attorneys' fees, which is the trend in this Circuit, is the percentage of the fund method." Amigon, 2024 WL 504036, at *5. "Under this method, the Court considers whether the requested fees are reasonable as compared to the settlement amount[,]" considering "fees awarded in similar cases, the risks to [c]lass [c]ounsel, and the lodestar calculation." Id. Here, Marin has not yet applied for attorneys' fees and costs, but the Firm has agreed to seek a maximum of $250,000, or one-third, of the Settlement Amount. (ECF Nos. 90 at 29; 90-1 at 3.2(A)). This "is a reasonable baseline" consistent with fee awards in other wage and hour class action settlements in the Second Circuit. Pickard, 2023 WL 7019256, at 10 (collecting cases); see Medina v. NYC Harlem Foods Inc., No. 21 Civ. 1321 (VSB), 2024 WL 230745, at *6 (S.D.N.Y. Jan. 22, 2024) (noting that one-third contingency fees are "routinely approved" in the Second Circuit). While the Court reserves judgment pending receipt of a formal application for attorneys' fees and costs, see id., the third factor does not preclude preliminary approval.

Accordingly, all three applicable Rule 23(e)(3)(C) factors, and the corresponding Grinnell factors, weigh in favor of preliminary approval.

### iv. Equitable treatment of class members (Fed. R. Civ. P. 23(e)(2)(D))

In evaluating whether the Agreement "treats class members equitably relative to each other[,]" Fed. R. Civ. P. 23(e)(2)(D), the Court may consider "whether the apportionment of relief among class members takes appropriate account of the differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Id. adv. cmte. n. (2018). As we have found, the method of distribution

appears reasonable.  (See § III.B.1.d.iii., supra).  Other than the service award to Marin, the proposed method of distribution of the Net Settlement Fund treats all Class Members uniformly by awarding each Authorized Claimant a proportionate amount based on their hours worked. (ECF No. 90-1 ¶¶ 1.24, 3.4).  This factor therefore weighs in favor of preliminary approval.

### v.  Remaining Grinnell Factors

Having considered each of the Rule 23(e)(2) factors, the only three remaining Grinnell factors are "the reaction of the class to the settlement, the stage of the proceedings and the amount of discovery completed, [and] the ability of the defendants to withstand a greater judgment."  Grinnell, 495 F.2d at 463.  We cannot evaluate the reaction of the Settlement Class because notice has not yet been distributed.  See Amigon, 2024 WL 5040436, at *6.

As to the stage of the proceedings and the amount of discovery completed (Grinnell factor (3)), the purpose is to assure the Court "that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them."  Klein ex rel. Ira v. PDG Remediation, Inc., No. 95 Civ. 4954 (DAB), 1999 WL 38179, at *2-3 (S.D.N.Y. Jan. 28, 1999).  Here, the parties entered into the Agreement after "complet[ing] paper discovery and on the eve of depositions."  (ECF No. 91 at 25; see ECF No. 90-1 ¶¶ 15-19).  The Firm represents that Defendants' document production enabled them "to evaluate the strengths, weaknesses, and value of the claims."  (ECF No. 91 at 25; see ECF No. 90 ¶ 17).  The record reflects that the parties engaged "in substantial investigation and prosecution of the claims, and substantial formal and informal settlement negotiations."  Amigon, 2024 WL 5040436, at *6.  This factor thus also weighs in favor of preliminary approval.

As to Defendants' ability to withstand a greater judgment (Grinnell factor (7)), we note

that a defendant's "ability to pay is much less important than the other Grinnell factors, especially

where the other factors weigh in favor of approving settlement." Flores v. Mamma Lombardi's

of Holbrook, Inc., 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015). Further, "a defendant's ability to

withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."

Manley v. Midan Rest. Inc., No. 14 Civ. 1693 (HBP), 2017 WL 1155916, at *5 (S.D.N.Y. Mar. 27,

2017). In any event, Marin acknowledges that "the Bars are small not large businesses and the

food industry has notoriously small profit margins." (ECF No. 91 at 27). We also reasonably infer

from the fact that Defendants require twelve months to fully fund the settlement if the Class

Members claim more than 30% of the Net Settlement Fund (ECF No. 90-1 ¶ 3.1(B)) that

Defendants' financial condition is uncertain, or at least, that they do not have extensive cash

deposits. (See ECF No. 91 at 27). See Flores, 104 F. Supp. 3d at 304 (drawing in part "from

experience and common sense" the inference that defendant restaurant would not be able to

withstand a greater judgment). This factor therefore also weighs in favor preliminary approval.

Accordingly, the remaining applicable Grinnell factors weigh in favor of preliminary

approval of the Agreement.

### e.  Cheeks Review - Wolinsky Factors

As other courts in the Second Circuit have noted, "the Wolinsky factors substantially

overlap with the factors that courts consider when reviewing a proposed class action settlement

under Rule 23(e)[,]" including "the plaintiff's possible recovery if litigation were to continue, the

liability risk of the parties, the potential expense of continued litigation, whether the agreement

results from arm's-length bargaining, whether plaintiff's counsel was experienced, and the

possibility of fraud or collusion." <u>Caccavale v. Hewlett-Packard Co.</u>, No. 20 Civ. 974 (NJC) (ST), 2024 WL 4250337, at *22 (E.D.N.Y. Mar. 13, 2024).  Some courts have therefore found that "satisfaction of the <u>Grinnell</u> factor analysis will, necessarily, satisfy the standards of approval of the FLSA [collective action] settlement." <u>D'Angelo v. Hunter Bus. Sch., Inc.</u>, No. 21 Civ. 3334 (JMW), 2023 WL 4838156, at *5 n.1 (E.D.N.Y. July 28, 2023).  The crux of the inquiry is "whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation." <u>Mills v. Capital One, N.A.</u>, No. 14 Civ. 1937 (HBP), 2015 WL 5730008, at *6-7 (S.D.N.Y. Sept. 30, 2015) (citing <u>Wolinsky</u> and noting that <u>Cheeks</u> review of collective action settlement is less stringent than review of Rule 23 class action settlement).

Our analysis above substantially addresses the first three <u>Wolinsky</u> factors—the range of possible recovery, the avoidance of burdens and expenses, and the seriousness of the litigation risks.  900 F. Supp. 2d at 335.  As to the remaining two factors, the Court has no trouble concluding that the Agreement resulted from arm's-length negotiations by experienced counsel concerning complex, disputed issues of fact and law.  Finally, "there is no evidence that even suggests any collusion." <u>Mills</u>, 2015 WL 5730008, at *7.

Accordingly, the Court is also likely to find that, under the totality of the circumstances, the Agreement is fair and reasonable under <u>Cheeks</u>.

*      *      *

For the forgoing reasons, preliminary approval of the Agreement and conditional certification of the Settlement Class is warranted, pending the Fairness Hearing.

### 2.  **Appointment of Settlement Class Counsel**

When a court certifies a class under Rule 23, it must also "appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B). In appointing class counsel, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]"  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

For the reasons set forth above (see § III.B.1., supra), the Firm will fairly and adequately represent the interests of the Class and the Court therefore appoints the Firm as counsel for the Settlement Class.

### 3.  **Proposed Notice and Distribution**

Having determined that preliminary approval of the Agreement and conditional certification of the Settlement Class is warranted, the Court "must direct notice in a reasonable manner to all class members who would be bound by the" Agreement.  Fed. R. Civ. P. 23(e)(1)(B). For Rule 23(b)(3) classes, the Court must direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The notice must clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

"There are no rigid rules to determine whether a settlement notice to the class satisfied constitutional or Rule 23(e) requirements . . . Notice is adequate if it may be understood by the average class member." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 114 (2d Cir. 2005). In addition, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time and place of the final approval hearing." Mikhlin, 2021 WL 129559, at *12.

The Proposed Notice contains a general description of the claims and defenses, who is included in the Settlement Class, how Class Members' proportionate share of the Net Settlement Fund will be calculated, and how to submit a claim form, object, and opt out of the Agreement. (ECF No. 90-1 at 25-31). The Proposed Notice also explains how Class Members can be heard at the Fairness Hearing, that the Court will exclude from the Settlement Class any member who timely and properly requests exclusion, and the binding effect of a class judgment on Class Members who do not opt out. (Id.)

Within fourteen (14) days of this Opinion & Order, Defendants' counsel are to provide the Claims Administrator and the Firm a list of Class Members containing the information required by the Agreement (the "Class List"). (ECF No. 90-1 ¶¶ 1.9, 2.5(A)). Within seven (7) days of receiving the Class List, the Class Administrator is to mail the Proposed Notice to the Class Members. (ECF No. 90-1 ¶ 2.5(B)). By the Bar Date—60 days from the mailing of the Proposed Notice—Class Members must return the claim form, provide written notice of their intention to

opt out of the Agreement, or mail a written statement of objections to be heard at the Fairness

Hearing.  (ECF No. 90-1 ¶¶ 2.5(D), 2.6, 2.7).

Because the Proposed Notice and notice procedure set forth in the Agreement provide

reasonable notice to the Class members and clearly and concisely state in plain, easily understood

language the information required by Rule 23(c)(2)(B), the Court approves the Proposed Notice,

hereinafter referred to as the "Class Notice."  (ECF No. 90-1 ¶ 2.5(B)).

### IV. <u>CONCLUSION</u>

For the reasons stated above, the Motion (ECF No. 89) is GRANTED and it is ORDERED

that:

(1) For the purposes of settlement only, pursuant to Federal Rules of Civil Procedure 23(a)

and (b)(3), the Court GRANTS conditional certification of the Settlement Class,

consisting of all tipped employees, including servers, bussers, and bartenders, of the

Bars in Manhattan from February 22, 2018 and May 8, 2024 who do not opt out of

the New York Labor Law claims in this action.  Excluded from the Settlement Class are

any Class Members who validly and timely request exclusion in accordance with the

requirements set forth in the Class Notice and this Opinion & Order.

(2) For the purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23,

Gina Marin is certified as the class representative or Lead Plaintiff on behalf of the

Settlement Class, and Joseph & Kirschenbaum LLP is certified as Lead Counsel for the

Settlement Class and is authorized to act on behalf of the Lead Plaintiff and other Class

Members with respect to all acts or consents required or that may be given pursuant

to the Agreement, including all acts that are reasonably necessary to consummate the Agreement.

(3) For purposes of settlement only, the prerequisites of Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied, in that: (i) the number of Class Members is so numerous that joinder of all Class Members is impracticable; (ii) there are questions of law and fact common to the Settlement Class; (iii) the claims of Lead Plaintiff are typical of the claims of the Class Members she seeks to represent; (iv) Lead Plaintiff will fairly and adequately represent the interests of the Settlement Class; (v) questions of law and fact common to the Settlement Class predominate over any questions affecting only individual Class Members; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of this action.

(4) The Court GRANTS preliminarily approval of the Agreement, in that: (i) the Agreement results from good faith, arm's length negotiations, including a mediation between Lead Plaintiff and Defendants under the direction of an experienced mediator; (ii) the relief provided to the Settlement Class is adequate; (iii) the Agreement treats Class Members equitably relative to each other; and (iv) the parties' counsel are experienced in class-action wage and hour litigation and had sufficient information to evaluate the Agreement.

(5) The Court substantially approves the form, substance, and requirements of the Class Notice and Claim Form. (ECF No. 90-1 at 25-31). The parties shall update any dates

and deadlines prescribed in the Class Notice and Claim Form to conform with this Opinion & Order.

(6) The parties identified XPand Legal as the Claims Administrator and XPand Legal is therefore appointed as the Claims Administrator. (See ECF No. 90-1 ¶ 1.6).

(7) The Fairness Hearing is scheduled for **Thursday July 17, 2025 at 2:30 p.m. ET** in Courtroom 18A, 500 Pearl Street, New York, NY 10007.

The parties submitted a proposed order setting forth the settlement procedures and schedule together with the appointment of XPand Legal as Claims Administrator (ECF No. 90-2), which we will approve in a separate order to be filed following this Opinion & Order. The Clerk of Court is respectfully directed to terminate ECF No. 89.

Dated:     New York, New York
           March 24, 2025

                                        SO ORDERED.

                                        _____
                                        SARAH L. CAVE
                                        United States Magistrate Judge