UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GINA MARIN, on behalf of herself and all other
similarly situated,

               Plaintiff,

    v.

310 BOWERY GROUP, LLC d/b/a 310 BOWERY
BAR and EPSTEIN'S BAR, LLC d/b/a 82
STANTON BAR, and RICHARD AURIGEMMA,

               Defendants.

24-cv-01340 (SLC)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640

*Attorneys for Plaintiff, Opt-In Plaintiffs, and the Settlement Class*

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................ 1

A.    The Lawsuit ............................................................................................................ 1

B.    Discovery and Settlement Discussions ................................................................. 2

C.    Settlement Terms ................................................................................................... 3

D.    Release of Claims ................................................................................................... 5

III.  ARGUMENT ................................................................................................................. 5

A.    The Class Should Be Finally Certified For Settlement Purposes ....................... 5

B.    The Proposed Settlement Should Be Approved .................................................... 5

   i.   The proposed settlement is fair, reasonable, and adequate and should be approved ...... 6

      a.   Procedural fairness ......................................................................................... 6

      b.   Substantive fairness ........................................................................................ 7

         1.   Complexity, expense, and likely duration of the litigation (*Grinnell* factor 1 and Rule 23(e)(2)(C)(i)) ....................................................................... 7

         2.   Reaction of the class (*Grinnell* factor 2) .............................................. 8

         3.   Stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3) ............................................................................................... 9

         4.   Risks of establishing liability (*Grinnell* factor 4 and Rule 23(e)(2)(C)(i)) ........... 10

         5.   Risks of establishing damages (*Grinnell* factor 5) ............................. 11

         6.   Risks of maintaining the class action through trial (*Grinnell* factor 6 and Rule 23(e)(2)(C)(i)) ................................................................................. 11

         7.   Ability of Defendants to withstand a greater judgment (*Grinnell* factor 7) ......... 11

         8.   Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation (*Grinnell* factors 8 and 9 and Rule 23(e)(2)(C)(i)) ... 12

         9.   The effectiveness of the proposed method of distributing relief (Rule 23(e)(2)(C)(ii)) ...................................................................................... 14

         10.  The terms of the proposed attorneys' fee award (Rule 23(e)(2)(C)(iii)) .............. 14

         11.  The settlement treats Class Members equitably (Rule 23(e)(2)(D)) ..................... 14

   ii.  The Notice to Class Members Meets the Requirements of Rule 23 ............................. 17

C.    Approval Of The Settlement Of The FLSA Claims Is Also Appropriate ........................ 17

D.    The Claims Administrator's Fees Should Be Approved .................................................. 17

E.    Class Counsel's Attorneys' Fees And Costs Should Be Approved ................................. 18

   i.   Class Counsel's Requested Fee Award is Reasonable .................................................. 18

      a.   Goldberger factors ........................................................................................ 19

1. Counsel's time and labor ........................................................................... 19

2. The litigation's magnitude and complexity and the risks of litigation ................ 21

3. Quality of the representation ................................................................... 21

4. The fee is reasonable in relation to the settlement ................................... 23

5. Public policy considerations ................................................................ 23

IV.    CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Argudo v. Parea Grp. LLC*, No. 18 CV 0678,
　　2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sept. 24, 2019)……………………..22

*Bannerman v. Air-Sea Packing Group*, No. 18 CV 6146,
　　2020 U.S. Dist. LEXIS 12868 (S.D.N.Y. Jan. 24, 2020)....................................16, 18, 19

*Banyai v. Mazur*, No. 00 Civ. 9806,
　　0207 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007) ..................................20

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ........................................21

*Capsolas v. Pasta Res., Inc.*, No. 10 CV 5595,
　　2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ...................................12,17

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).......................................*passim*

*Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 CV 3203,
　　2018 U.S. Dist. LEXIS 170192 (E.D.N.Y. Sept. 28, 2018)...............................21

*D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21 CV 3334,
　　2023 U.S. Dist. LEXIS 131029 (E.D.N.Y. July 28, 2023) .................................13, 20

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................19

*Deas v. Alba Carting & Demolition Inc.*, No. 17 CV 3947,
　　2021 U.S. Dist. LEXIS 38803 (S.D.N.Y. Mar. 2, 2021) ....................................16

*Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) ......................................22

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494,
　　2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 11, 2015)...................................23

*Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 CV 7854,
　　2021 U.S. Dist. LEXIS 27462 (S.D.N.Y. Feb. 12, 2021) ...................................13

*D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787,
　　2008 U.S. Dist. LEXIS 96034 (E.D.N.Y. Nov. 25, 2008)..................................11, 12

*Emeterio v. A&P Rest. Corp.*, No. 20 CV 970,
　　2022 U.S. Dist. LEXIS 14598 (S.D.N.Y. Jan. 26, 2022)....................................13, 16

i

*Flores v. Anjost Corp.*, No. 11 Civ. 1531,
    2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 29, 2014)....................................16

*Flores v. CGI Ins.*, No. 22 CV 350,
    2022 U.S. Dist. LEXIS 192572 (S.D.N.Y. Oct. 21, 2022) .................................7, 9,16

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2015)...................................15, 16

*Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452,
    2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ..................................23

*Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386,
    1991 U.S. Dist. LEXIS 4995 (S.D.N.Y. Apr. 10, 1991)....................................11

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)...................................19

*Guevoura Fund Ltd. v. Sillerman*, No. 15 CV 7192,
    2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) .................................10

*Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029,
    2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) .................................23

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024)...................................10

*Hamadou v. Hess Corp.*, No. 12 Civ. 0250,
    2015 U.S. Dist. LEXIS 79777 (S.D.N.Y. June 18, 2015)...................................16

*Hart v. RCI Hosp. Holdings*, No. 09 Civ. 3043,
    2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sept. 22, 2015)...............................9,12,13

*Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91 (E.D.N.Y. 2015)……………………9

*Hicks v. Morgan Stanley & Co., Inc.*, No. 01 Civ. 10071,
    2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ..................................23

*In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389,
    2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ..................................19

*In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)..............21

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262,
    2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ..................................19

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997).......................11,12

*In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884,

2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007) ...................................22

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................5,18

*In re Tenaris S.A. Sec. Litig.*, No. 18 CV 7059,
    2024 U.S. Dist. LEXIS 72980 (E.D.N.Y. Apr. 22, 2024) ..................................7

*Jara v. Felidia Rest.*, No. 17 CV 9622,
    2018 U.S. Dist. LEXIS 241262 (S.D.N.Y. Dec. 17, 2018) ...............................23

*Johnson v. Brennan*, No. 10 Civ. 4712,
    2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011)................................16

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381,
    2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ....................................19

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002).....................*passim*

*Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518,
    2024 U.S. Dist. LEXIS 17358 (S.D.N.Y. Sept. 24, 2024)..................................22

*Megason v. Starjem Rest. Corp.*, No. 12 CV 1299,
    2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 10, 2014)…………………………22

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..........................14

*Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023) ....................................6,7,14, 15

*Murphy v. Lajaunie*, No. 13 CV 6503,
    2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) ..................................22

*Nichols v. Noom, Inc.*, No. 20 CV 3677,
    2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 202) ..................................20

*Park v. FDM Grp., Inc.*, No. 16 CV 1520,
    2021 U.S. Dist. LEXIS 12819 (S.D.N.Y. Jan. 22, 2021)..................................16

*Pefanis v. Westway Diner, Inc.*, No. 08 CV 002,
    2010 U.S. Dist. LEXIS 93180 (S.D.N.Y. Sept. 7, 2010)..................................22

*Pickard v. Onsite Facility Servs., LLC*, No. 22 CV 207,
    2023 U.S. Dist. LEXIS 191242 (N.D.N.Y. Oct. 25, 2023) ...............................8, 9,14

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015)..........................................16, 18

*Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114 (S.D.N.Y. Jan. 8, 2014)................22

*Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011)....................21

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ...........................15

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...............................................18

*Sukhnandan v. Royal Health of Long Island LLC*, No. 12 CV 4216,
2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014) .................................21

*Taft v. Ackermans*, No. 02 Civ. 7951,
2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)......................................20, 21, 23

*Teachers Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814,
2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004).....................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)..................6, 10,11, 18

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693,
2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ...................................24

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018)...........................22

**Statutes, Rules, Regulations, and Other Authorities**

12 N.Y.C.R.R. § 146-1.3 ................................................................................................2

12 N.Y.C.R.R. § 146-2.2 ................................................................................................2

12 N.Y.C.R.R. § 146-3.4 ................................................................................................2

29 U.S.C. § 202.............................................................................................................24

29 U.S.C. § 203.............................................................................................................2

Fed. R. Civ. P. 23 ..................................................................................................*passim*

N.Y. Lab. L. § 195 .................................................................................................*passim*

N.Y. Lab. L. § 196-d..............................................................................................*passim*

N.Y. Lab. L. § 650 .......................................................................................................24

N.Y. Lab. L. § 652 .........................................................................................................1

iv

## I.    INTRODUCTION

Plaintiff Gina Marin ("Plaintiff" or "Named Plaintiff") respectfully submits this memorandum of law in support of her motion for final approval of the parties' February 19, 2025 Settlement Agreement and Release ("Settlement Agreement" or "Agreement").[1]

## II.    BACKGROUND

### A.  The Lawsuit

Defendants own/operate 310 Bowery Bar and 82 Stanton Bar, two bars in Lower Manhattan. (ECF No. 97 ¶ 4.)  Plaintiff worked as servers at both bars between March 2022 and February 2024.  (*Id*. at ¶ 5.)  On February 22, 2024, Plaintiff commenced this action on behalf of herself and a putative class of similarly situated service employees, alleging that Defendants (1) failed to properly pay minimum wage and overtime premiums because they unlawfully took advantage of a tip credit under New York law despite failing to notify tipped employees that a tip credit was being applied to their wages, in violation of New York Codes Rules and Regulations ("NYCRR") § 146- 1.3; (2) required service employees at 310 Bowery to share tips with tip ineligible managers, in violation of 29 U.S.C. § 203 and N.Y. Lab. L. § 196-d; and (3) did not provide service employees with the wage statements and wage notices required under N.Y. Lab. L. § 195.[2]  (ECF No. 97 ¶ 6.)

In April 2024, Defendants moved to dismiss Plaintiff's fourth cause of action—that Defendants allegedly failed to provide written wage notices and wage statements—arguing that Plaintiff does not have standing to pursue those claims. *See* Dkt. No. 46.  Plaintiff opposed that

---

[1]  In support of this motion, Plaintiff submits the July 10, 2025 declaration of Josef Nussbaum ("Nussbaum Decl."), and exhibits thereto ("Ex. [number]") and the July 10, 2025 declaration of Jonathan Paul, CEO of Xpand Legal who is responsible for administering the settlement.

[2]  Plaintiff also filed individual retaliation claims under the NYLL. Those claims were discontinued in January 2025. Dkt. No. 81.

motion, which is still pending before the Court. (ECF No. 97 ¶ 7.)

In July 2024, the Parties agreed to conditionally certify this case as an FLSA collective action on behalf of tipped employees at 310 Bowery, and Plaintiff's counsel disseminated notice to potential collective action members. In response to the notice, six employees joined the action as Opt-In Plaintiffs. (*Id*. at ¶ 8.)

Plaintiff's minimum wage and overtime claims are based on Defendants' use of the tip credit to pay service employees. Plaintiff alleges that Defendants' use of the tip credit was unlawful because Defendants did not provide written notice of the tip credit to employees. 12 NYCRR §§ 146-1.3, 146-2.2, 146-3.4. (ECF No. 90 ¶ 9.)

Plaintiff also contends that Defendants included managers who had hiring, firing, and scheduling authority in the bars' tip pools, in violation of 29 U.S.C. § 203 and N.Y. Lab. L. § 196-d. (ECF No. 90 ¶ 10.)

Finally, Plaintiff alleges that Defendants (1) either failed entirely to provide the wage notices required under N.Y. Lab. L. § 195(1) or provided deficient notices; and (2) violated N.Y. Lab. L. § 195(3) by failing to accurately identify the tip credit taken. (ECF No. 90 ¶ 11.)

Defendants denied, and continue to deny, all of Plaintiff's allegations and maintain that they paid employees properly in compliance with applicable law. (*Id*. ¶ 12.)

### B. Discovery and Settlement Discussions

The Parties were in the process of completing fact discovery when they reached this settlement. (*Id*. at ¶ 13.) The Named Plaintiff responded to Defendants' written discovery requests and produced responsive documents.[3] (*Id*. at ¶ 16.) By agreement of the Parties, Defendants produced a sampling of putative Class Members' time records, payroll records, wage notices, wage

---

[3] Defendants did not serve discovery requests on all Opt-In Plaintiffs. (ECF No. 90 ¶ 17.)

statements, and tip sheets for six different payroll cycles during the limitations period, which enabled Plaintiff to evaluate the strength of her claims. (*Id*. at ¶ 14.) Defendants also produced year end payroll for both bars with the total number of hours that tipped employees were paid at the tip credit rate in each year covered by this lawsuit. (*Id*. at ¶ 15.) The payroll data produced by Defendants allowed Plaintiff to make an accurate calculation of the amount the class would be entitled to if successful on all its claims. (*Id*. at ¶ 16.) In discovery, Plaintiff also discovered that a small number of Class Members executed releases of any wage and hour claims they may have against Defendants. (*Id*. at ¶ 17.)

Plaintiff noticed and was preparing to take depositions of all Defendants in mid-December 2024. (*Id*. at ¶ 18.) Prior to incurring additional expenses relating to depositions and additional discovery, the Parties agreed to attend a mediation to try to settle the case and, on December 16, 2024 the Parties attended a private mediation with the Mr. Giulio Zanolla of Resolute Systems LLC. (*Id*. at ¶ 19.) The Parties were not successful in reaching a resolution at the mediation. However with Mr. Zanolla's continued assistance, the Parties continued to negotiate and, on January 13, 2025, reached a settlement in principle to resolve the wage and hour claims on a class-wide basis for $750,000.00. (*Id*. at ¶ 20.) Plaintiff believes this settlement amount is highly favorable to the Class in light of their litigation risks. (*Id*. at ¶ 21.)

### C.  Settlement Terms

The Settlement Agreement provides that Defendants shall pay a maximum settlement amount of Seven Hundred and Fifty Thousand Dollars ($750,000.00) (the "Settlement Payment"). (Agreement ¶¶ 1.23, 3.1(A).) The Settlement Payment includes payments to Class Members, attorneys' fees and costs, a service award to the Named Plaintiff, and settlement administration costs. (*Id*. at ¶¶ 3.1, 3.2, 3.3, 3.4.)

The Net Settlement Fund ("NSF") is the remainder of the Settlement Payment after deductions for Court-approved attorneys' fees and costs, the Court-approved service award, settlement administration costs, and any other costs, expenses, fees, or other distributions (other than payments to Class Members) associated with the settlement. (*Id*. at ¶ 1.24.) Plaintiff's counsel will seek recovery of their litigation costs and attorneys' fees of no more than one-third of the Settlement Payment. (*Id*. at ¶ 3.2.)

The NSF shall be distributed among Class Members who worked at 310 Bowery and 82 Stanton (collectively, the "Bars") in Covered Positions between February 22, 2018 and May 8, 2024. (*Id*. at ¶¶ 1.12, 1.20, 1.26, 3.4.) 95% of the NSF will be allocated among all Class Members on a *pro rata* basis according to the number of hours Defendants paid them at the tip credit from February 22, 2018 to May 8, 2024. (*Id*. at ¶ 3.4(A)(2)(a).) The remaining 5% of the NSF will be allocated among all Class Members on a *pro rata* basis according to the amount of credit card tips they received from February 22, 2018 to May 8, 2024. (*Id*. at ¶ 3.4(A)(2)(b).) Notwithstanding these formulas, any Class Members who previously executed a release of wage and hour claims during the pendency of the litigation will receive $150 from the Net Settlement Fund. (*Id*. at ¶ 3.4(A)(1).) Class Members must submit a Claim Form in order to receive their allocated share of the Net Settlement Fund. (*Id*. at ¶ 3.4(A)(4).) Claim Forms must be submitted within 60 days of when the Claims Administrator mails notice of the settlement. (*Id*. at ¶¶ 1.4, 1.5.)

As more than 30% of the NSF has been claimed by Class Members (ECF No. 98 (Paul Decl.) ¶¶ 14, 17), Defendants shall fund 50% of the Final Payable Amount within seven (7) days of the Effective Date and the remaining 50% no later than twelve (12) months after the Effective Date. (Agreement at ¶ 3.1(B)(2).) The Effective Date shall be thirty-five (35) days after the Court has entered a Final Order and Judgment approving this Agreement unless there are any appeals.

(*Id*. at ¶ 1.16.)

Settlement checks will be valid for 90 days. Class Members can request new Settlement Checks up to 180 days from the time that the second installment is distributed. (*Id*. at ¶ 3.4(F).) Any money still remaining in the Settlement Fund on the later of one hundred eighty-one (181) days after the final distribution of Settlement Checks are issued or fifty (50) days after the last reissued settlement check is issued shall revert back to Defendants. (*Id*. at ¶ 3.4(G).)

### D. Release of Claims

In return for the above consideration, all Class Members who have not opted out of the Class will release all state law wage and hour claims against Defendants for time worked in Covered Positions. (*Id*. at ¶ 4.1.) All Class Members who cash their settlement checks will release all FLSA claims against Defendants for time worked in Covered Positions. (*Id*. at ¶ 4.2.)

## III.    ARGUMENT

### A. The Class Should Be Finally Certified For Settlement Purposes

For the reasons set forth in Plaintiff's preliminary approval motion, the requirements of Rule 23 are certified, and the Class should be finally certified for settlement purposes.

### B. The Proposed Settlement Should Be Approved

Fed. R. Civ. P. 23(e) ("Rule 23") requires judicial approval of any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet . . . it must stop short of the detailed and thorough

investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

### i. The proposed settlement is fair, reasonable, and adequate and should be approved

In order to approve a class action settlement, courts must determine whether the settlement fair, reasonable, and adequate based on the negotiating process and the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In doing so, courts must consider the factors set forth in Rule 23(e)(2), specifically, whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
> (i)   the costs, risks, and delay of trial and appeal;
> (ii)  the effectiveness of any proposed method of distributing relief to the    class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv)  any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

### a. Procedural fairness

The factors relevant to the procedural fairness of a settlement are whether the class representative (Plaintiff Marin) and class counsel have adequately represented the class and the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A), (B); *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Both of these factors are satisfied here.

As set forth in Plaintiff's preliminary approval motion, the Named Plaintiff has fairly and adequately protected the interests of all Class Members throughout this litigation, and she has no known conflicts with Class Members. No Class Member has objected to the Named Plaintiff's role as Class Representative. (ECF No. 98 at ¶ 8.) Similarly, Class Counsel are highly experienced in class action wage and hour litigation and have vigorously litigated this hard-fought action,

ultimately securing an excellent result for the Class.  (ECF No. 97 ¶¶ 32-38; *see also infra* at 22-23.)  Thus, Rule 23(e)(2)(A) is satisfied.  *See In re Tenaris S.A. Sec. Litig.*, No. 18 CV 7059, 2024 U.S. Dist. LEXIS 72980, at *15-17 (E.D.N.Y. Apr. 22, 2024).

Finally, the settlement was negotiated at arm's length, which negotiations included a mediation with an experienced mediator, and following complete pre-class certification discovery that enabled Plaintiff's Counsel to evaluate both the strength and value of the Class's claims. (Nussbaum Decl. ¶¶ 13-20.)  Accordingly, the settlement is procedurally fair. *Flores v. CGI Inc.*, No. 22 CV 350, 2022 U.S. Dist. LEXIS 192572, at *16-18 (S.D.N.Y. Oct. 21, 2022).

### b.  Substantive fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463; *Moses*, 79 F.4th at 242-43.  Rather than applying these factors formulaically, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell*, 495 F.2d at 468.  Courts must also consider the Rule 23(e)(2)(C), (D) factors, many of which overlap with the *Grinnell* factors.  *Moses*, 79 F.4th at 243, 244.

### 1.  Complexity, expense, and likely duration of the litigation (*Grinnell* factor 1 and Rule 23(e)(2)(C)(i))

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation. *Maley v. Del Global Tech. Corp.*,

186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002). "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Pickard v. Onsite Facility Servs., LLC*, No. 22 CV 207, 2023 U.S. Dist. LEXIS 191242, at *16 (N.D.N.Y. Oct. 25, 2023) (internal quotation omitted). This case is no exception, as claims have been brought under federal and state statutes, and there are numerous disputed factual and legal issues. These disputes include whether Defendants provided the requisite notice to use a tip credit, whether Defendants included tip-ineligible managers in the tip pool at 310 Bowery, whether Defendants provided the wage notices and statements required under New York law, and whether Plaintiffs and the Class Members have standing for their N.Y. Lab. L. § 195 claims. (ECF No. 97 Decl. ¶¶ 6-12.)

Further litigation would involve additional expense and delay, including completing depositions for Defendants and the Named Plaintiff (as well as, potentially, the six Opt-In Plaintiffs), Rule 23 motion practice and summary judgment motions. Preparing and putting on evidence on the complex factual and legal issues at trial would also consume a great deal of time and resources for both sides, as well as require substantial judicial resources to adjudicate the parties' disputes. Any judgment would likely be appealed, thereby extending the duration of the litigation and depleting any possible recovery. This Settlement, on the other hand, makes monetary relief available to Rule 23 Class Members in a prompt and efficient manner. Therefore, these factors weigh in favor of final approval.

### 2. Reaction of the class (*Grinnell* factor 2)

The positive reaction of the Class Members overwhelmingly supports approval of the settlement. In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that object to and opt out of the settlement. Where relatively few class

members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement. *Flores*, 2022 U.S. Dist. LEXIS 192572, at *19-20.

Claims Administrator Xpand Legal Consulting mailed the Class Notice to 275 Class Members on May 8, 2025. (ECF No. 98 at ¶ 4.) The deadline for these Class Members to opt out and/or object to the settlement was July 7, 2025. (*Id.* at Ex. B.) No Class Members have objected to or opted out of the settlement. (*Id.* at ¶¶ 7-8.) In addition, to date, 65 Class Members have submitted claim forms,[4] and their claims constitute roughly 62% of the Net Settlement Fund. (*Id.* at ¶¶ 6, 14, 17.) *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) ("[T]he 22 class members filing claims constitute a 20% participation rate. This participation rate is well above average in class action settlements.") (citing 2 McLaughlin on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10–15 percent range.")). Thus, Class Members' satisfaction with the settlement is clear.

### 3. Stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3)

Courts consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement. *Pickard*, 2023 U.S. Dist. LEXIS 191242, at *17. Courts look at whether "counsel 'possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.'" *Hart v. RCI Hosp. Holdings*, No. 09 Civ. 3043, 2015 U.S. Dist. LEXIS 126934, at *28 (S.D.N.Y. Sept. 22, 2015). The parties entered into the proposed Settlement Agreement following substantial paper discovery and on the eve of Defendants' depositions. (ECF No. 97 ¶¶ 14-19.) This discovery enabled Plaintiff and Plaintiff's counsel to evaluate the strengths,

---

[4] 64 Authorized Claimants and the Named Plaintiff.

weaknesses, and value of the claims. (ECF No. 97 ¶ 16.) Accordingly, this factor weighs in favor of approving the settlement.

### 4.    Risks of establishing liability (*Grinnell* factor 4 and Rule 23(e)(2)(C)(i))

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the certainty of recovery, against the continuing risks of litigation." *Guevoura Fund Ltd. v. Sillerman*, No. 15 CV 7192, 2019 U.S. Dist. LEXIS 218116, at *23 (S.D.N.Y. Dec. 18, 2019). Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing[.]" *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

Defendants have asserted multiple factual and legal defenses to Plaintiff's claims. As discussed *supra*, the parties dispute whether Defendants were entitled to pay Class Members pursuant to a tip credit, whether Defendants misappropriated a portion of Class Members' tips at 310 Bowery, and whether Defendants provided wage notices and wage statements that complied with the NYLL. Many of the facts underlying these disputes would have to be determined based on testimony rather than documents, heightening the risk of establishing liability. If litigation continued, the Court would have had to consider Defendants' fully briefed motion seeking a finding that Plaintiffs' and the Class Members' did not have standing to bring the N.Y. Lab. L. § 195 claims. *See* ECF Nos. 46-50, 59; *see also Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). While Plaintiff believes the Class does have standing on these claims, this motion still presents a significant risk.

Finally, Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Settlement alleviates this uncertainty, and is therefore preferable to trial, which may result in a smaller per-plaintiff recovery or no recovery at all.

### 5. Risks of establishing damages (*Grinnell* factor 5)

Courts also consider the risks of establishing damages. Regardless of the class's ability to establish liability, they would still face "risks in proving [their] damages at trial." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119. While damages would be calculated largely based on Defendants' documents, presenting and explaining payroll records to a jury is inherently risky. *See, e.g., In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128 ("damages are a matter for the jury, whose determinations can never be predicted with certainty"); *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

### 6. Risks of maintaining the class action through trial (*Grinnell* factor 6 and Rule 23(e)(2)(C)(i))

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified. *D.S. v. N.Y. City Dep't of Educ.*, 255 F.R.D. 59, 78 (E.D.N.Y. 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991). Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class. *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18. Here, no non-settlement class has yet been certified, and if the parties had not reached a settlement, Defendants would have opposed Plaintiff's motion for class certification. Thus, there was a risk that the class would not be certified absent a settlement, and this factor weighs in favor of approval.

### 7. Ability of Defendants to withstand a greater judgment (*Grinnell* factor 7)

Courts consider a defendant's ability to withstand a judgment greater than the settlement. *D.S.*, 255 F.R.D. at 78. At the mediation and in the conversations between the parties and the mediator following the mediation, the Corporate Defendants' represented that they would be unable to pay anywhere close to the damages Plaintiff sought. In fact, Defendants insisted that if more than 30% of the NSF was claimed (which it has been), Defendants will only be required to pay half the Final Payable Amount after the settlement is finally approved and the remaining 50% of the Final Payable Amount will only be due 13 months later. (Agreement at ¶ 3.1(B)(2).) By agreeing to bifurcate the settlement payment into two installments, Plaintiff was able to secure the $750,000 settlement. This fact is also a strong indication that Defendants' finances are limited and they would not be able to pay (much) more than the amount they agreed on here. Thus, this factor also weighs in favor of approval.

### 8. Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation (*Grinnell* factors 8 and 9 and Rule 23(e)(2)(C)(i))

"The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Hart*, 2015 U.S. Dist. LEXIS 126934, at *31. The determination of the "'best possible' recovery necessarily assumes Plaintiff's success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365. These factors weigh strongly in favor of approval of the Settlement.

> [T]here is a range of reasonableness with regard to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.

*Capsolas v. Pasta Res., Inc.*, No. 10 CV 5595, 2012 U.S. Dist. LEXIS 144651, at *18 (S.D.N.Y.

Oct. 5, 2012) (internal quotation marks omitted).

Plaintiff estimates that the Class's maximum possible damages for the tip credit and tip disgorgement claims are approximately $1.5 million. Of this, the maximum amount of unpaid tip credit (for regular and overtime hours) is roughly $670,000, and the estimated tip disgorgement amount is $80,000. Accordingly, Class Members' maximum out of pocket loss is roughly $750,000, which is the amount of the settlement. The remainder of the best possible recovery is liquidated damages equal to the amount of unpaid wages and roughly $2.8 million penalties for the contested N.Y. Lab. L. § 195 violations. (ECF No. 97 ¶¶ 23-25.)

While there is a possibility that the Class may be awarded more money after trial (and appeal), in light of the risks of the case described *supra*, the Settlement provides the significant benefit of a guaranteed and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road" or, worse, a larger judgment which the Class is unable to collect. *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004). The settlement amount, which represents 100% of the Class Members' maximum unpaid wages and 17% of the best possible recovery is well within the range of settlements approved in this Circuit. *E.g.*, *Pickard*, 2023 U.S. Dist. LEXIS 191242, at *21 (approving settlement equal to 16% of maximum unpaid wages); *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21 CV 3334, 2023 U.S. Dist. LEXIS 131029, at *18-19 (E.D.N.Y. July 28, 2023) (approving settlement that was 5% of best possible recovery); *Emeterio v. A&P Rest. Corp.*, No. 20 CV 970, 2022 U.S. Dist. LEXIS 14598, at *23-24 (S.D.N.Y. Jan. 26, 2022) (approving settlement that was 25% of best possible recovery); *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 CV 7854, 2021 U.S. Dist. LEXIS 27462, at *14 (S.D.N.Y. Feb. 12, 2021) (approving settlement that was 28% of best possible recovery).

### 9. The effectiveness of the proposed method of distributing relief (Rule 23(e)(2)(C)(ii))

The method of distributing relief is effective and fair. Checks will be mailed to all Class Members who have timely submitted claim forms. (Agreement ¶ 1.5.) Mailing checks is self-evidently a highly effective method of distributing relief and thus satisfies Rule 23(e)(2)(C)(ii).

### 10. The terms of the proposed attorneys' fee award (Rule 23(e)(2)(C)(iii))

The terms of the proposed award of attorneys' fees, including timing of payment, are reasonable. As discussed below, Class Counsel seeks a fee of $250,000.00, or one-third of the settlement. This is in line with the percentage awards approved in this Circuit and is reasonable in light of, *inter alia*, Class Counsel's time and labor, the quality of the representation, and the magnitude, complexities, and risks of the litigation. *See infra* at 21-24.

### 11. The settlement treats Class Members equitably (Rule 23(e)(2)(D))

Under Rule 23(e)(2)(D), a court must consider whether the allocation of the settlement among class members, including any service awards, is fair. *Moses*, 79 F.4th at 253. The Settlement's NSF allocation formula applies to all Class Members and is fair. The NSF is allocated on a *pro rata* basis according to Class Members' hours worked and tips received as reflected in Defendants' records. This is a reasonable method of allocation given that Class Members' minimum wage and overtime damages accrued based on hours worked, and their misappropriated tips damages accrued based on the amount of tips they received. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (internal quotation marks omitted).

14

The requested service award is also fair and equitable.  Under the proposed Settlement Agreement, and subject to the Court's approval, the Named Plaintiff will receive a $10,000 service award. (Ex. 1 ¶ 3.3.)  The Second Circuit recently affirmed that service awards are permissible in class action settlements.  *Moses*, 79 F.4th at 245, 253-56.  In fact,

> the equitable-treatment requirement protects the interests of class representatives who play an active role in the litigation – often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process – "from having absent class members free ride on their efforts."

*Id*. at 245.  Service awards "are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2015).

The Named Plaintiff expended considerable time and effort to assist Class Counsel with the case. (ECF No. 97 ¶¶ 27-29.)  She initiated this action, remained in regular communication with Class Counsel throughout the litigation.  (*Id.* at ¶ 27.)  The Named Plaintiff provided payroll records to her attorneys and explained relevant and necessary factual information to Class Counsel. (*Id*. at ¶ 28.)  She also participated in the mediation session. (*Id*. at ¶ 29.)  Thus, the Named Plaintiff's assistance was crucial in the prosecution and proposed resolution of the case.

The Named Plaintiff also assumed significant risks in prosecuting this action.  In the employment context, where workers can be considered "troublemakers," individuals who take a leading role in litigation can be particularly vulnerable to retaliation.  *E.g.*, *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, less others be dissuaded.").  Even where, as

here, there is no evidence of any actual retaliation, service fees are appropriate in recognition of the risk of retaliation assumed by a lead plaintiff for the benefit of absent class members. *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action . . . , the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

The $10,000 service award is reasonable in comparison with those approved by other courts, and it represents just 1.33% of the Settlement Fund. *See*, *e.g.*, *Emeterio*, 2022 U.S. Dist. LEXIS 14598, at *31 (approving five service awards totaling $30,000 from $450,000 settlement); *Deas v. Alba Carting & Demolition Inc.*, No. 17 CV 3947, 2021 U.S. Dist. LEXIS 38803, at *9-10 (S.D.N.Y. Mar. 2, 2021) (approving nine service awards ranging from $5,000 to $15,000 and totaling $65,000 from $1.5 million settlement); *Park v. FDM Grp., Inc.*, No. 16 CV 1520, 2021 U.S. Dist. LEXIS 12819 (S.D.N.Y. Jan. 22, 2021) (awarding 21 service awards ranging from $1,500 to $20,000 and totaling $58,500 out of $4.135 million settlement); *Bannerman v. Air-Sea Packing Group*, No. 18 CV 6146, 2020 U.S. Dist. LEXIS 12868, at *4 (S.D.N.Y. Jan. 24, 2020) (awarding two service awards totaling $20,000 from $548,400 settlement); *Raniere v. Citibank Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving service awards ranging from $7,500 to $20,000); *Hamadou v. Hess Corp.*, No. 12 Civ. 0250, 2015 U.S. Dist. LEXIS 79777, at *10 (S.D.N.Y. June 18, 2015) (approving service awards totaling $33,000, or 4.77% of $691,350 settlement); *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 U.S. Dist. LEXIS 11026, at *27 (S.D.N.Y. Jan. 29, 2014) (approving five service awards of $25,000 each from $1,050,000 settlement); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) (awarding four service awards totaling $40,000, or 9.09% of $440,000 settlement). This modest award is reasonable and equitable to the other Class Members, who are benefiting

from the efforts of the Named Plaintiff.

### ii.  The Notice to Class Members Meets the Requirements of Rule 23

As set forth in the Court's March 24, 2025 Order, the Settlement Notice satisfies the requirements of Rule 23(c)(2)(B).

### C.  Approval Of The Settlement Of The FLSA Claims Is Also Appropriate

Plaintiff seeks approval of the settlement of the FLSA wage and hour claims.  FLSA claims are brought as a "collective action" in which employees must affirmatively opt-in to the litigation. 29 U.S.C. § 216(b).  Because employees who do not opt-in to an FLSA action do not lose their right to file suit at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, and the high standard for approval of a class settlement does not apply to an FLSA settlement.  *See Capsolas*, 2012 U.S. Dist. LEXIS 144651, at *18-19.

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes."  *Id.* at *19.  The adversarial nature of an FLSA action is typically a sufficient indication of a settlement's fairness.  *Id.*  "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, the settlement should be approved."  *Id.*  The settlement in this case was the result of vigorously contested litigation and arm's-length negotiation.  The settlement of the FLSA claims is thus fair and reasonable and should be approved.

### D.  The Claims Administrator's Fees Should Be Approved

The parties retained Xpand Legal Consulting to administer the settlement.  The Claims Administrator estimates that settlement administration costs will total $14,450.  (ECF No. 97 at ¶ 31.)  Thus, Plaintiff respectfully requests that the Court approve all of the Claims Administrator's reasonable fees to be paid from the settlement fund.

### E.  Class Counsel's Attorneys' Fees And Costs Should Be Approved

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted).  "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf."  *Id.*  The award of attorneys' fees has the benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature."  *Id.*  Here, the Settlement Agreement authorizes Class Counsel to receive one-third of the Settlement Payment as attorneys' fees as well as reimbursement of costs.

Although there are two ways to compensate attorneys for successful prosecution of class actions (the lodestar method or the percentage of the recovery method), "[t]he trend in [the Second] Circuit is toward the percentage method, . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation."  *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal quotation marks omitted); *see also Bannerman*, 2020 U.S. Dist. LEXIS 12868, at *3 (noting that the percentage of recovery method is "consistent with the trend in this Circuit") (internal quotation marks omitted); *Raniere*, 310 F.R.D. at 220 (noting that "[c]ourts in the Second Circuit tend to grant class counsel a percentage of any settlement, rather than utilize the 'lodestar method'"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases).

### i.  Class Counsel's Requested Fee Award is Reasonable

Pursuant to the Settlement Agreement, Class Counsel seeks $250,000.00 from the settlement fund as attorneys' fees and $5,354.00 as costs. (*See* ECF No. 97 at ¶ 53 for a breakdown

of the costs for which Class Counsel seek reimbursement.)  This request for a fee of one-third of the settlement fund is consistent with both the retainer agreement Class Counsel entered into with the Named Plaintiff (ECF No. 97 at ¶ 47) and the norms of class litigation in this Circuit.  *See, e.g.*, *Park*, 2021 U.S. Dist. LEXIS 12819, at *3-4; *Bannerman*, 2020 U.S. Dist. LEXIS 12868, at *3-4; *In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ("A fee award of one-third of the Settlement Fund 'is well within the range accepted by courts in this circuit.'"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (awarding fees of one-third of $42,000,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (awarding fees of 33% of $9,250,000 settlement); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, at *76 (S.D.N.Y. Nov. 26, 2002) ("In this district alone, there are scores of common fund cases where fees alone (*i.e.*, where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund.").

### a.  Goldberger factors

In determining whether a fee is reasonable, courts consider "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

### 1.  Counsel's time and labor

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement.  This case settled following after motion practice on Defendant's partial motion to dismiss and the completion of paper discovery.  The time invested in motion practice,

managing the opt-in process, engaging in discovery, meeting with the Plaintiff and Opt-In Plaintiffs, engaging in settlement discussions, and managing the settlement notice phase was a reasonable expenditure of Class Counsel's time. *See, e.g., Maley*, 186 F. Supp. 2d at 371-372.

The parties conducted extensive paper discovery related to the class's wage and hour allegations, which Class Counsel used to evaluate the claims and calculate damages. (ECF No. 97 at ¶¶ 13-18.) Class Counsel spent substantial time responding to Defendants' motion to dismiss, handling discovery disputes, and managing the opt-in process. Class Counsel engaged in mediation and spent significant time following the mediation to negotiate and finalize the formal settlement agreement and coordinate the administration of the settlement. (*Id.* at ¶ 50.) Moreover, through regular contact with the Plaintiff and Opt-In Plaintiffs, Class Counsel kept them informed of and involved in the action. *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) (noting that Class Counsel "spent time communicating with members of the Class").

Class Counsel invested $104,375 worth of time – including 196.1 attorney hours and 50.6 paralegal/administrative assistant hours – in litigating and settling this action. (ECF No. 97 at ¶ 45; Ex. 4.) Thus, the requested fee results in a lodestar multiplier of 2.39. When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney." *Taft v. Ackermans*, No. 02 Civ 7951, 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007). The multiplier of 2.39 in this case is well within the range of multipliers approved in this Circuit. *E.g.*, *D'Angelo*, 2023 U.S. Dist. LEXIS 131029, at *29-30 (2.07 multiplier); *Nichols v. Noom, Inc.*, No. 20 CV 3677, 2022 U.S. Dist. LEXIS 123146, at *33 (S.D.N.Y. July 12, 2022) (approving 2.88 multiplier and stating that it "is fully consistent with that found to be reasonable

20

[in] other cases in this Circuit"); *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 CV 3203, 2018 U.S. Dist. LEXIS 170192, at *16-17 (E.D.N.Y. Sept. 28, 2018) (approving 2.3 multiplier and noting that "'[c]ourts regularly award lodestar multipliers from two to six times lodestar'"); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 CV 4216, 2014 U.S. Dist. LEXIS 105596, at *43 (S.D.N.Y. July 31, 2014) (2.98 multiplier); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (6.3 multiplier). Accordingly, Class Counsel's time and labor weighs in favor of approving the requested fee.

### 2. The litigation's magnitude and complexity and the risks of litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *30 (internal quotation omitted); *see also In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("The contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees."). Class Counsel took this case pursuant to a retainer agreement with the Plaintiff that stated that Counsel would receive a percentage of the recovery *only if* Plaintiff obtained a recovery. As discussed *supra*, this was a complex litigation, and Plaintiff and the Class faced significant risks in establishing liability and damages. Thus, Class Counsel risked receiving little or no payment for their work. (ECF No. 97 at ¶¶ 47-49.)

### 3. Quality of the representation

Class Counsel have extensive experience representing employees – and particularly restaurant employees – in wage-hour class and collective actions, as outlined in the Nussbaum Declaration ¶¶ 32-38, 42-44. *E.g.*, *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011) (affirming district court's certification of Rule 23 class of restaurant servers with JK as

class counsel); *Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518, 2024 U.S. Dist. LEXIS 173358 (S.D.N.Y. Sept. 24, 2024) (denying defendants' motion to decertify the class and granting in the main plaintiffs' motion for summary judgment); *Chakma v. Sushi Katsuei, Inc.*, 2025 U.S. Dist. LEXIS 22048 (S.D.N.Y. Feb. 7, 2025) (certifying class and appointing JK class counsel); *Argudo v. Parea Grp. LLC,* No. 18 CV 0678, 2019 U.S. Dist. LEXIS 163249 at *17 (S.D.N.Y. Sept. 24, 2019) (same); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 74 (S.D.N.Y. 2018) (same); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) (certifying class and appointing JK co-class counsel); *Megason v. Starjem Rest. Corp.*, No. 12 CV 1299, 2014 U.S. Dist. LEXIS 3910 at *27 (S.D.N.Y. Jan. 10, 2014) (certifying class and appointing JK class counsel); *Schear v. Food Scope Am., Inc.,* 297 F.R.D. 114, 136 (S.D.N.Y. Jan. 8, 2014) (same); *Pefanis v. Westway Diner, Inc.*, No. 08 CV 002, 2010 U.S. Dist. LEXIS 93180 (S.D.N.Y. Sept. 7, 2010) (denying restaurant's motion for decertification of Rule 23 class and § 216(b) collective); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) (conditionally certifying FLSA collective).  Class Counsel used their experience to obtain an excellent result for the class.  *See In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at *15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved for the class.").  No Class Members objected to the attorneys' fees or any other part of the settlement, a "reaction . . . [which] is entitled to great weight by the Court."  *Maley*, F. Supp. 2d at 374.

"The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work."  *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted).  Defendants were represented in this action by experienced litigators with Kaufman Dolowich LLP.

### 4. The fee is reasonable in relation to the settlement

In the Second Circuit, it is well settled that a fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit[,]" particularly in wage and hour class settlements. *Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (wage and hour settlement); *see also*, *e.g.*, *D'Angelo*, 2023 U.S. Dist. LEXIS 131029, at *26; *Delijanin*, 2021 U.S. Dist. LEXIS 27462, at *20; *Bannerman*, 2020 U.S. Dist. LEXIS 12868; *Jara v. Felidia Rest.*, No. 17 CV 9622, 2018 U.S. Dist. LEXIS 241262, at *6 (S.D.N.Y. Dec. 17, 2018); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *12-13 (S.D.N.Y. May 11, 2015); *Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *43; *see also Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026 , at *24 (S.D.N.Y. Oct. 28, 2011) (noting that "[i]n class settlement funds like this one, a one-third award of the settlement proceeds is considered typical and reasonable").

Class Counsel seek a $250,000 fee, or one-third of the settlement fund.  While this percentage could constitute a "windfall" in cases involving larger settlement funds, the requested fee of $250,000 "does not create such an issue."  *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32 ($15,175,000 settlement); *see also Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *38 ($1,949,000 settlement).  This this factor weighs strongly in favor of approving the requested fee.

### 5. Public policy considerations

The FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices.  29 U.S.C. § 202(a); N.Y. Lab. Law § 650.  A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes.  *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks v. Morgan Stanley & Co., Inc.*, No. 01 Civ.

10071, 2005 U.S. Dist. LEXIS 24890, at *26 (S.D.N.Y. Oct. 24, 2005).  Moreover, given the relatively small recoveries of individual Class Members, it is unlikely that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations."  *Frank*, 228 F.R.D. at 181.  Indeed, "[w]here relatively small claims can only be prosecuted through aggregate litigation, and law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts."  *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327, at *25-26 (S.D.N.Y. Oct. 2, 2013).  In light of the foregoing, Class Counsel's requested attorneys' fees are reasonable under the *Goldberger* factors and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks the Court to (1) finally certify the Rule 23 class; (2) grant final approval of the Settlement Agreement; (3) award Class Counsel attorneys' fees and costs; (4) approve the requested service awards; and (5) award the Claims Administrator its reasonable fees towards administering the settlement.

Dated: New York, New York
      July 10, 2025

By:    _s/ Josef Nussbaum_
         D. Maimon Kirschenbaum
         Josef Nussbaum
         JOSEPH & KIRSCHENBAUM LLP
         32 Broadway, Suite 601
         New York, NY 10004
         212-688-5640

         *Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word count limitation of Local Civil Rule 7.1(c) because it contains 7625 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

Dated: July 10, 2025                    By:    s/ *Josef Nussbaum*
                                               Josef Nussbaum