UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GINA MARIN, on behalf of herself and all other similarly situated,<br><br>Plaintiff,<br>v.<br><br>310 BOWERY GROUP, LLC d/b/a 310 BOWERY BAR and EPSTEIN'S BAR, LLC d/b/a 82 STANTON BAR, and RICHARD AURIGEMMA,<br><br>Defendants. | 24-cv-01340 (SLC) |

## DECLARATION OF JOSEF NUSSBAUM

I, Josef Nussbaum, under penalty of perjury, affirm as follows:

1. I am a partner with Joseph & Kirschenbaum LLP ("JK"), Plaintiff's counsel in this action. I submit this declaration in support of Plaintiff's motion for final approval of a class action settlement. I am familiar with the facts and circumstances set forth herein.

2. Attached hereto as **Exhibit 1** is a true and correct copy of the parties' executed settlement agreement.

3. Attached hereto as **Exhibit 2** is a proposed final approval order.

4. Defendants own/operate 310 Bowery Bar and 82 Stanton Bar, two bars in Lower Manhattan.

5. Plaintiff worked as servers at both bars between March 2022 and February 2024.

6. On February 22, 2024, Plaintiff commenced this action on behalf of herself and a putative class of similarly situated service employees, alleging that Defendants (1) failed to properly pay minimum wage and overtime premiums because they unlawfully took advantage of a tip credit under New York law despite failing to notify tipped employees that a tip credit was

being applied to their wages, in violation of New York Codes Rules and Regulations ("NYCRR") § 146- 1.3; (2) required service employees at 310 Bowery to share tips with tip ineligible managers, in violation of 29 U.S.C. § 203 and N.Y. Lab. L. § 196-d; and (3) did not provide service employees with the wage statements and wage notices required under N.Y. Lab. L. § 195.[1]

7. In April 2024, Defendants moved to dismiss Plaintiff's fourth cause of action—that Defendants allegedly failed to provide written wage notices and wage statements—on the basis that Defendants maintain that Plaintiff does not have standing to pursue those claims. Plaintiff opposed that motion and it is still pending before the Court.

8. In July 2024, the Parties agreed to conditionally certify this case as an FLSA collective action on behalf of tipped employees 310 Bowery and disseminated notice to potential collective action members. In response to the notice, six employees joined the action as Opt-In Plaintiffs.

9. Plaintiff's minimum wage and overtime claims are based on Defendants' use of the tip credit to pay service employees. Plaintiff alleges that Defendants were not entitled to use the tip credit because Defendants did not provide written notice of the tip credit to employees. NYCRR §§ 146-1.3, 146-2.2, 146-3.4.

10. Plaintiff also contends that Defendants included managers, who had hiring, firing, and scheduling authority, in the bars' tip pools and thus violated 29 U.S.C. § 203 and N.Y. Lab. L. § 196-d.

11. Finally, Plaintiff alleges that Defendants (1) either failed entirely to provide the wage notices required under N.Y. Lab. L. § 195(1) or provided deficient notices; and (2) violated N.Y. Lab. L. § 195(3) by failing to accurately identify the tip credit taken.

---

[1] Plaintiff also filed individual retaliation claims under the NYLL. Those claims were discontinued in January 2025. Dkt. No. 81.

12. Defendants denied, and continue to deny, all of Plaintiff's allegations and maintain that they paid employees properly in compliance with applicable law.

13. The Parties were in the process of completing fact discovery at the time they reached this settlement.

14. By agreement of the Parties, Defendants produced a sampling of putative Class Members' time records, payroll records, wage notices, wage statements, and tip sheets for six different payroll cycles during the limitations period, which enabled Plaintiff to evaluate the strength of her claims.

15. Defendants also produced year end payroll for both bars with the total number of hours that tipped employees were paid at the tip credit rate in each year covered by this lawsuit.

16. The payroll data produced by Defendants allowed Plaintiff to make an accurate calculation of the amount the class would be entitled to if successful on all its claims.

17. In discovery, Plaintiff also discovered that a small number of Class Members executed releases of any wage and hour claims they may have against Defendants.

18. Plaintiff noticed and was preparing to take depositions of all Defendants in mid-December 2024.

19. Prior to incurring additional expenses relating to depositions and additional discovery, the Parties agreed to attend a mediation to try and settle the case and, on December 16, 2024 the Parties attended a private mediation with the Mr. Giulio Zanolla of Resolute Systems LLC.

20. The Parties were not successful in reaching a resolution at the mediation, however with Mr. Zanolla's continued assistance, the Parties continued to negotiate and, on January 13, 2025, reached a settlement in principle to resolve the claims of the tipped front of the house

employees for $750,000.00.

21. Plaintiff believes this settlement amount is highly favorable to the Class in light of their litigation risks.

22. The Class as defined in the Settlement Agreement has more than 40 members.

23. The settlement amount compensates Class Members' for roughly 100% of their unpaid minimum wage and tips compensation.

24. The settlement amount is approximately 17% of the Class Members' maximum possible recovery, including liquidated damages and penalties. Liquidated damages and penalties together make up more than 80% of the maximum possible recovery.

25. Specifically, Plaintiff estimates that the Class's maximum possible damages are approximately $4.3 million. Of this, the maximum amount of unpaid tip credit (for regular and overtime hours) is roughly $670,000, and the estimated tip disgorgement amount is $80,000 Accordingly, Class Members' maximum out of pocket loss is roughly $750,000. The remainder of the best possible recovery is liquidated damages equal to the amount of unpaid wages and approximately $2.8 million in penalties for alleged N.Y. Lab. L. § 195 violations.

26. Named Plaintiff Marin ais an adequate representatives of the proposed class, has fairly and adequately represented and protected the interests of all Class Members, and has no known conflicts with Class Members.

## SERVICE AWARDS

27. Named Plaintiff Marin initiated this action and remained in regular communication with Class Counsel throughout the litigation.

28. Ms. Marin provided payroll records to her attorneys and explained relevant and necessary factual information to Class Counsel.

29. Ms. Marin also participated in the mediation session.

## CLAIMS ADMINISTRATION AND CLASS MEMBER RESPONSE

30. The parties engaged Claims Administrator Xpand Legal Consulting ("Xpand") to administer the settlement.

31. Xpand estimates that their fee will be $14,500.

## PLAINTIFF'S COUNSEL

32. JK is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters.

33. D. Maimon Kirschenbaum manages the firm.

34. Since graduating from Fordham University School of Law in 2005, Mr. Kirschenbaum has worked at JK. As a result of his accomplishments, he became member/partner of the firm in May of 2007.

35. Denise Schulman received her J.D. from New York University School of Law in 2008 and joined JK in January 2009. She was an associate until February 2017, at which point she became a partner.

36. Throughout her tenure at JK, she has almost exclusively represented employees with wage and hour and discrimination/retaliation claims, on both an individual and class basis.

37. I graduated from McGill University's Faculty of Law in 2009 and joined JK in 2011. I became a partner in 2020.

38. The majority of my personal current docket consists of class and collective action lawsuits against New York employers for wage and hour violations.

39. Mariela Lini was a paralegal at JK from January 2024 until March 2025. She received her B.A. from John Jay College of Criminal Justice in 2019. Before joining JK, she had nearly five years of experience as a legal assistant/paralegal.

40. Andy Pichardo was an administrative assistant at JK from December 2023 until March 2025. He received his BA from The City College of New York in June 2023.

41. Andrew Deternoz has been a paralegal at JK since March 2025. He received his B.A. from the University of Houston in 2016. Before joining JK, Mr. Deternoz worked as a paralegal for two years.

42. Mr. Kirschenbaum, Ms. Schulman, JK, and I have been approved numerous times as lead or co-lead class counsel (or counsel for representative plaintiffs in FLSA collective actions) in wage and hour actions in federal and state courts. *E.g.*, *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011); *Chakma v. Sushi Katsuei, Inc.*, 2025 U.S. Dist. LEXIS 22048 (S.D.N.Y. Feb. 7, 2025); *Martinenko v. 212 Steakhouse Inc.*, No. 22 CV 518, 2023 U.S. Dist. LEXIS 73982 (S.D.N.Y. Apr. 27, 2023); *Lomeli v. Falkirk Mgmt. Corp.*, Index No. 1580-2016 (N.Y. Sup. Ct. Orange County Oct. 22, 2021); *Argudo v. Parea Grp. LLC,* No. 18 CV 0678, U.S. Dist. LEXIS 163249 at *17 (S.D.N.Y. Sept. 24, 2019); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015); *Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 13, 2014); *Schear v. Food Scope Am, Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014); *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011); *Spicer v. Pier Sixty LLC*, 2010 U.S. Dist. LEXIS 76782 (S.D.N.Y. July 26, 2010); *Kato v. Masa NY*, Index No.

09-104578 (S. Ct., N.Y. County Jan. 28, 2010); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) (conditionally certifying FLSA collective action); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009); *Williams v. Twenty Ones, Inc.*, No. 07-Civ-3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. Oct. 5, 2007).

43. Several of these cases have changed the landscape of wage and hour class and collective litigation in general, and such litigation in the food service industry specifically. *See*, *e.g.*, *Shahriar*, 659 F.3d 234 (affirming class certification and holding that in FLSA actions pursued on a collective basis under 29 U.S.C. § 216(b), courts may exercise supplemental jurisdiction over state law claims pursued on a class basis under Fed. R. Civ. P. 23); *Spicer*, 249 F.R.D. 321 (holding that the New York Court of Appeals' decision in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), finding that mandatory charges can be gratuities applies retroactively and issuing first denial of a defendant's summary judgment motion on *World Yacht* claim).

44. As a result of these lawsuits, we have recovered over $100 million for thousands of workers. *E.g.*, *Gordon v. Bluetriton Brands, Inc.*, No. 616877/2022 (N.Y. Sup. Ct. Nassau County Oct. 24, 2023) (granting final approval of $8.4 million settlement); *Capsolas*, 2012 U.S. Dist. LEXIS 144651 (granting final approval of $5,250,000 settlement); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) (granting final approval of $8.5 million settlement); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) (granting final approval of $4,750,000 settlement); *Alderman v. 21 Club Inc.*, No. 09 Civ. 2418 (S.D.N.Y. Jan. 27, 2012) (granting final approval of $2,000,000 settlement); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011) (granting final approval of $1,975,000 settlement); *Braunstein v.*

7

*Hudson Hall LLC*, No. 19 Civ. 7983 (S.D.N.Y. May 14, 2021) (approving $950,000 settlement); *Ahad v. BLT Steak LLC*, No. 08 Civ. 5528 (S.D.N.Y. Aug. 13, 2010) (approving $925,000 settlement); *Brinker v. Planet Hollywood N.Y., L.P.*, No. 08 Civ. 443, 2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. Aug. 13, 2009) (granting final approval of $900,000 settlement); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of $2,500,000 settlement).

45. JK's contemporaneous time records for this case are attached hereto as **Exhibit 3**. Below is a chart summarizing the specific attorneys, their hourly rates, and their total time worked on this matter, in addition to the total paralegal time for time spent by JK on this matter. These rates have been approved by courts in this District. *E.g., Zivkovic, Laura Christy LLC, et al*, 17 CV 553 (S.D.N.Y.) (**Exhibit 4**) at 17:9-24; *Martinenko v. 212 Steakhouse, Inc.*, 22 CV 518, 2024 U.S. Dist. LEXIS 231925, at *9-10 (S.D.N.Y. Dec. 23, 2024).

| Individual | Rate | Total Hours | Total |
|---|---|---|---|
| D. Maimon Kirschenbaum | $500 | 31.7 | $15,850 |
| Denise A. Schulman | $500 | 21.5 | $10,750 |
| Josef Nussbaum | $500 | 142.9 | $71,450 |
| Paralegals/administrative assistants | $125 | 50.6 | $6,325 |
| | | **Totals:** | **$104,375** |

46. We will expend more hours after the date of this motion in appearing at the Fairness Hearing and monitoring the administration of the Settlement.

47. Class Counsel took this case pursuant to a retainer agreement with Plaintiff that stated Counsel would receive up to one-third of the recovery only if Plaintiff obtained a recovery.

8

48. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney and paralegal participating in the case.

49. Class Counsel undertook to prosecute this action without an assurance of payment for their services, litigating this case on a wholly contingent basis in the face of substantial risk. Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Attorneys undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. Class Counsel stood to gain nothing in the event the case was unsuccessful.

50. JK undertook the responsibility to fund the costs of this case and to litigate through trial if necessary, and possibly appeals if relevant. Our activities included, but were not limited to: interviewing and remaining in regular contact with Plaintiff and the Opt-In Plaintiffs; conducting paper discovery and depositions; raising discovery disputes with the Court; briefing a motion for class certification; reviewing hundreds of documents produced by Defendants; preparing damage calculations; negotiating the settlement; drafting the settlement agreement; drafting motions for preliminary and final approval of the settlement; monitoring the administration of the settlement; and communicating with Class Members. After the fairness hearing, we will continue to oversee the administration of the settlement and respond to Class Member inquiries.

51. To date, Class Counsel have worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

52. No Class Member has raised objections to the attorneys' fees as set forth in the Notice of Settlement.

53. Class Counsel incurred the following costs in litigating this case:

| Description of cost | Total Cost |
|---|---|
| Filing fee | $405.00 |
| Service of Complaint | $332.64 |
| Transcript Request fees | $196.56 |
| Mediation fees | $4,420.00 |
| **Total** | **$5,354** |

Dated: July 11, 2025

    /s/ *Josef Nussbaum*
Josef Nussbaum