# EXHIBIT  1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GINA MARIN, on behalf of herself and all other similarly situated, | |
| Plaintiff, | |
| v. | 24-cv-01340 (SLC) |
| 310 BOWERY GROUP, LLC d/b/a 310 BOWERY BAR, EPSTEIN'S BAR, LLC d/b/a 82 STANTON BAR, and RICHARD AURIGEMMA, | |
| Defendants. | |

## SETTLEMENT AGREEMENT AND RELEASE (Front of House)

This Settlement Agreement and Release (the "Agreement") is entered into by and between Gina Marin (hereinafter "Plaintiff"), on behalf of herself and a class and collective of allegedly similarly-situated employees that they seek to represent, and 310 Bowery Group, LLC d/b/a 310 Bowery Bar, Epstein's Bar, LLC d/b/a 82 Stanton Bar, and Richard Aurigemma (collectively "Defendants," and together with Plaintiff, the "Parties").

## 1.    RECITALS AND BACKGROUND

WHEREAS, on February 22, 2024, Plaintiff filed a putative class and collective action (the "Litigation") against Defendants in the United States District Court for the Southern District of New York asserting various claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for Defendants' alleged failure to pay minimum wage and overtime; failure to provide required certain wage notices and statements; and the inclusion of allegedly tip-ineligible individuals in 310 Bowery Bar's tip pool;

WHEREAS, six additional individuals (Victoria Sievers, Megan Kaye, Molly Feldman, Autum J, Smith, Elise McDonald, and Sienna Shumate) filed consent to sue forms joining the Litigation (the "Opt-In Plaintiffs");

WHEREAS, on December 16, 2024, the Parties attended a mediation with Giulio Zanola of Resolute Systems LLC at which they did not reach a settlement;

WHEREAS, with Mr. Zanola's assistance, the Parties continued to negotiate and reached a settlement in principle on January 13, 2025;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as defined below) between Plaintiffs, Opt-in Plaintiffs, Class Members, Defendants, and Releasees (as defined below);

WHEREAS, Defendants deny and continue to deny all of the allegations made in the Litigation and have denied and continue to deny that they are liable or that they owe damages to anyone with the respect to the allegations or causes of action asserted in the Litigation. Nonetheless, solely for the purposes of settling this Litigation, and without admitting any wrongdoing or liability, Defendants have agreed to disseminate a notice of settlement pursuant to Fed. R. Civ. P. 23 and §216(b) of the FLSA to all Class Members and Opt-in P (as both terms are defined below);

WHEREAS, the purpose of this Agreement is to settle fully and finally all State Law Claims and FLSA Claims (as defined below) among the Named Plaintiffs, the Class Members, the Opt-in Plaintiffs, Releasees, and Defendants, including all claims asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, without admitting or conceding any liability or damages whatsoever and without admitting that wages and/or other amounts improperly were withheld from any employees, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Plaintiff's Counsel (as defined below) has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiff's and putative members' class/collective action, and based upon Plaintiff's Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that, if not settled now, litigation might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiff's Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interest of Plaintiff and the putative members of the class/collective action;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **Agreement.**  "Agreement" means this Settlement Agreement and Release.

1.2    **Alternative Minimum Benefit.** "Alternative Minimum Benefit" means the minimum settlement amount of One Hundred and Fifty Dollars and Zero Cents ($150.00) for Class Members who previously executed a release of any wage and hour claims they may have against Defendants.  This Alternative Minimum Benefit is considered to be 100% non-wage damages and is not subject to tax withholdings.

1.3    **Authorized Claimant.** "Authorized Claimant" means the Named Plaintiff and any Class Member who timely submits a Claim Form. The Named Plaintiff shall be an Authorized Claimant regardless of whether she files a Claim Form.

1.4    **Bar Date.** The "Bar Date" will be the date that is sixty (60) days from the mailing of Notice to the Class Members.

1.5    **Claim Form.** "Claim Form" shall mean the form, a copy of which is attached to the Class Notice, that Class Members other than the Named Plaintiff must sign and submit by the Bar Date in order to be an Authorized Claimant and receive a Settlement Payment.

1.6    **Claims Administrator or Settlement Claims Administrator.** The "Claims Administrator" or "Settlement Claims Administrator" will be selected by the Parties, subject to approval by the Court, to mail the Notices and administer the calculation, allocation, and distribution of the QSF. The Settlement Claims Administrator's fees shall be borne by the QSF. The Parties have preliminarily identified XPand Legal as the Settlement Claims Administrator.

1.7    **Class Action Complaint.** "Class Action Complaint" shall refer to the Complaint filed in the Litigation (Dkt. No. 1).

1.8    **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" shall mean D. Maimon Kirschenbaum and Josef Nussbaum of Joseph & Kirschenbaum LLP, 32 Broadway, Suite 601 New York, New York 10004.

1.9    **Class List.** A list of all Class Members identified by: (i) name; (ii) last known address (to the extent Defendants possess this information); (iii) Social Security Number (to the extent that Defendants possess this information); (iv) hours paid by 310 Bowery Bar and 82 Stanton at the tip credit minimum wage from February 22, 2018 until May 8, 2024; and (v) tips received at 310 Bowery Bar between February 22, 2018 until May 8, 2024. The Class list shall identify all Class Members that executed a release of wage and hour claims during the pendency of this litigation. The Class List shall also reflect Zero Dollars ($0.00) in tips for individuals who were allegedly employed as managers/supervisors at 310 Bowery Bar, including: Chloe Font, Tyriek Good, Melissa Harris, Krystal Morrison, Madison Nirchi, John Timm, Anthony Tomaro, and Sean Waters. The Class List is confidential and shall be used by Class Counsel and the Settlement Claims Administrator to effectuate settlement and may not be used for any other purpose. The Class List shall be created and served in Microsoft Excel format.

1.10    **Class Members.** "Class Members" shall be defined as Plaintiff, the Opt-in Plaintiffs, and all members of the FLSA Class and NYLL Class.

1.11    **Court.** "Court" means the United States District Court for the Southern District of New York.

**1.12    Covered Positions.**  "Covered Positions" mean all tipped employees of 310 Bowery Bar and 82 Stanton, including servers, bussers, and bartenders employed at those bars in Manhattan.

**1.13    Days.**  Unless otherwise specified, days shall mean calendar days. If any deadline specified in this Agreement falls on a weekend or holiday, the due date shall be extended to the next business day that is not a weekend or holiday.

**1.14    Defendants.**  "Defendants" shall mean 310 Bowery Group, LLC d/b/a 310 Bowery Bar, Epstein's Bar, LLC d/b/a 82 Stanton Bar, and Richard Aurigemma, collectively.

**1.15    Defendants' Counsel.**  "Defendants' Counsel" shall mean Aaron N. Solomon of Kaufman Dolowich LLP, 135 Crossways Park Drive, Suite 201 Woodbury, NY 11797.

**1.16    Effective Date.**  The "Effective Date" shall be thirty-five (35) days after the Court has entered a Final Order and Judgment approving this Agreement, provided the time to appeal from the Final Approval Order has expired and no notice of appeal has been filed.  In the event a notice of appeal is filed, the Effective Date shall be the latest of the following: (1) the date any appeal from the Final Approval Order has been finally dismissed; (2) the date the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and/or (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical (i.e., including identical payment obligations and procedures, releases, and other material terms) to the form of the Final Approval Oder entered by the Court.

**1.17    Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.18    Final Approval Order.**  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, dismissing the Litigation with prejudice, and entering a judgment consistent with the Parties' settlement terms.

**1.19    Final Payable Amount**.  "Final Payable Amount" refers to the sum total of all money payable under this Agreement, including the Settlement Claims Administrator Fees, Attorneys' Fees and Costs awarded under paragraph 3.2, Service Award awarded under paragraph 3.3, and the sums of all Authorized Claimants' Individual Settlement Amounts under paragraphs 3.4(B)(2), plus any applicable amounts owed as Defendants' share of payroll taxes.  Under no circumstances shall the Final Payable Amount exceed the amount of the Maximum Settlement Amount.

**1.20    FLSA Class.** "FLSA Class" shall be defined as all workers who were employed at 310 Bowery Bar and 82 Stanton in New York, NY in Covered Positions between February 22,

2018 and May 8, 2024 and who endorse their settlement checks and/or have filed a valid consent to join form to join the Litigation prior to the Bar Date.

1.21 **Individual Settlement Amount**. "Individual Settlement Amount" shall mean each Class Member's potential share of the Net Settlement Fund, as calculated pursuant to Section 3.4 of this Agreement.

1.22 **Litigation.** The "Litigation" shall be defined as the lawsuit that Plaintiffs filed in the United States District Court for the Southern District of New York bearing the civil action number 24 CV 01340.

1.23 **Maximum Settlement Amount.** "Maximum Settlement Amount" or "Settlement Amount" means Seven Hundred and Fifty Thousand Dollars and Zero Cents ($750,000.00), which is the maximum amount Defendants will pay to settle the Litigation as set forth in this Agreement, inclusive of all professional fees and costs, service awards, and class administration fees and costs, but exclusive of payments made to cover the employer's share of payroll taxes.

1.24 **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Maximum Settlement Amount after deductions for: (1) Court-approved Settlement Claims Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Award to Plaintiff.

1.25 **Notice or Notices.** "Notice" or "Class Notice" means the Court approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing, including Claim Forms, and notice of an opportunity to opt-out and/or object to the proposed Settlement.

1.26 **NYLL Class.** "NYLL Class" shall be defined as all workers who employed in Covered Positions at 310 Bowery Bar and 82 Stanton in New York, New York between February 22, 2018 and May 8, 2024 and who do not opt-out of the New York Labor Law claims brought pursuant to the Litigation.

1.27 **Objector.** "Objector" means an individual who files an objection to this Agreement and does not include any individual who opts-out of this Agreement.

1.28 **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

1.29 **Parties.** "Parties" shall refer to Plaintiff and Defendants collectively.

1.30 **Plaintiff or Named Plaintiff.** "Plaintiff" or "Named Plaintiff" shall be refer to Plaintiff Gina Marin.

1.31 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement and directing the manner and timing of providing Notices to the Class Members.

1.32    **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.  Interest, if any, earned on the QSF will become part of the Net Settlement Fund.

1.33    **Releasees**.  "Releasees" shall mean Defendants and their respective present and former affiliates, related entities, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities and/or any of their present and former officers, partners, owners, employees, members, directors, agents, attorneys, investors, shareholders, insurers or reinsurers, shareholders, trustees, estates, transferees, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, in their individual and/or representative capacities, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

1.34    **Settlement Checks.** "Settlement Checks" means the set of checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

1.35    **Unredeemed Funds.**  "Unredeemed Funds" means any money still remaining in the Net Settlement Fund on the later of one hundred eighty-one (181) days after the final Settlement Checks are issued or fifty (50) days after the last reissued settlement check is issued, whichever is later.

1.36    **82 Stanton.** "82 Stanton" refers to the bar bearing that name located at 82 Stanton St, New York, NY 10002 and which is operated by Defendant Epstein's Bar, LLC.

1.37    **310 Bowery Bar.** "310 Bowery Bar" refers to the bar bearing that name located at 310 Bowery, New York, NY 10012 and which is operated by Defendant 310 Bowery Group, LLC.

2.    **INITIAL PROCEDURAL ISSUES**

2.1    **Binding Agreement.**  Subject to Court-approval, this Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2    **Preliminary Approval Motion.**

(A)    Within fourteen (14) days after the Parties' execution of this Agreement, Class Counsel will file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") with the Court.  The Preliminary Approval Motion will seek: (i) the setting of date(s) for individuals to opt-out of this Agreement or provide objections to this Agreement, which date will be sixty (60) days from the mailing of Notice to the Class Members; (ii) the appointment of the Claims Administrator

to administer the settlement; (iii) the appointment of Plaintiffs' Counsel as counsel for the class/collective; and (iv) for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date. Defendants will not oppose the Preliminary Approval Motion provided it is consistent with the terms of this Settlement Agreement.

(B)    If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling, to appeal the ruling, or to seek Court approval of a renegotiated settlement, the Litigation will continue as if no settlement had been attempted, and this Agreement shall be null and void. Defendants retain the right to contest whether the Litigation should be maintained as a class action and to contest the merits of the claims being asserted in the Litigation, including without limitation, contesting whether the Litigation is appropriate to proceed as a class and/or collective action.

(C)    The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.3    Retention and Responsibilities of the Settlement Claims Administrator.**

(A)    Within five (5) days after the granting of the Preliminary Approval Motion, the Parties shall engage the Court-approved Settlement Claims Administrator whose fee shall be paid from the Qualified Settlement Fund.

(B)    The Settlement Claims Administrator will be responsible for:

(1)    preparing, printing and disseminating the Court-approved Notices and Claim Forms to Class Members;

(2)    copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Class Member;

(3)    receiving, reviewing, and responding to any Opt-Out Statements or any other inquiries submitted by Class Members;

(4)    furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members which the Claims Administrator receives within three (3) days of receipt;

(5)    keeping track of requests for exclusion, including maintaining the original mailing envelope in which the request was mailed;

(6)    keeping track of returned Notices and Claim Forms;

(7)     within five days of receipt, ascertaining current address and addressee information for each Notice returned as undeliverable and re-mailing of Notices to the current address;

(8)     calculating distribution amounts to Class Members in accordance with this Agreement;

(9)     preparing and mailing the Settlement Checks and any related tax reporting forms to Plaintiff, Opt-In Plaintiffs, Class Members, Class Counsel, and any other party, entity, or individual for whom receipt of such documents is necessary or required;

(10)    calculating any employer-side payroll taxes required pursuant to the settlement and providing such information to Defendants' Counsel so that all payments required by Defendants pursuant to the terms of this Agreement can be made in a timely manner;

(11)    timely responding to inquiries from Class Members, Class Counsel, or Defendants' Counsel consistent with the Administrator's duties specified herein;

(12)    referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Claim Administrator's duties specified herein;

(13)    promptly apprising Class Counsel and Defendants' Counsel of the activities of the Administrator and maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

(14)    promptly providing copies to Class Counsel and Defendants' Counsel of any opt out forms and objections submitted by Class Members;

(15)    preparing, monitoring and maintaining a telephone number with phone answerers until the Final Effective Date or the termination of this Agreement whichever comes first;

(16)    distributing any Court-approved Service Award;

(17)    preparing and mailing (or wiring) Class Counsel's attorneys' fees, expenses, and costs and settlement payments in accordance with this Settlement Agreement and Order of the Court;

(18)    providing copies of the Settlement Checks and the endorsement of same to Class Counsel and Defendants' Counsel upon request;

(19)    providing a final report, deliverable to Class Counsel and Defendants' Counsel, detailing the results of the class mailings and participation;

(20)    mailing all required tax forms to Class Members and to Class Counsel as provided herein;

(21)    filing all necessary tax forms required under applicable tax laws and regulations as a result of the terms of this Agreement with the appropriate governmental agencies;

(22)    providing Class Counsel with any necessary documents regarding the claims administration process that Class Counsel may need in order to file a Motion for Final Approval of the Settlement;

(23)    distributing notices pursuant to, and otherwise timely complying with the requirements of, the Class Action Fairness Act ("CAFA"); and

(24)    such other tasks upon which the Parties mutually agree.

(C)    The Parties will have equal access to the Settlement Claims Administrator, and the Settlement Claims Administrator will provide regular reports to the Parties, but no less frequently than every two (2) weeks, regarding the status of the mailing of the Notices to Class Members, the identity and number of Class Members who submit Claim Forms, object to, and/or opt-out of the Settlement, and the distribution and redemption of the Settlement Checks.

(D)    In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendants' Counsel (a) a list of all Class Members who filed a timely objection and (b) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period. Throughout the period of claims administration, the Settlement Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices to Class Members, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

(E)    The Parties agree to reasonably cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members and updating information concerning Class Members.

**2.4**    **Class Notices.** The Class Notices will inform Class Members about this settlement and will also advise them of the opportunity to object to or opt-out, to appear at the Fairness Hearing, and to submit a Claim Form. A copy of the proposed Class Notice and Claim Form for mailing and emailing is attached hereto as Exhibit A.

## 2.5     Process for Notice to Class Members

(A)    Within fourteen (14) days after the Court issues the Preliminary Approval Order, Defendants' Counsel will provide the Settlement Claims Administrator and Class Counsel the Class List. At the same time that the Class List is served, both Corporate Defendants will provide Class Counsel with affidavits in which they will aver that a representative of each Corporate Defendant reviewed the data in the Class List to ensure that all the addresses Defendants provided for Class Members are as accurate as possible and that the addresses provided in all Class Members' W-4 forms, personnel files, and job application forms were reviewed to ensure that this information is accurate.

(B)    Within fourteen (14) days of receipt of the Class List, the Settlement Claims Administrator will mail to all Class Members, via First Class United States Mail, postage prepaid, the Court-approved Class Notice.

(C)    The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice and Claim Form is returned by the post office as undeliverable, including one skip trace, and shall attempt one re-mailing. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice and Claim Form sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. The Settlement Claims Administrator shall also mail a Class Notice and Claim Form to any Class Member who requests a that a second copy be mailed.

(D)    A Class Member will have sixty (60) days from the date the Settlement Claims Administrator first mails the Notice and Claim Form to return the completed Claim Form to the Settlement Claims Administrator.  To be effective, a Claim Form must be received by the Settlement Claims Administrator by the Bar Date or, if received after the Bar Date, post-marked by the Court-authorized Bar Date. To the extent that the envelope does not contain a post-mark, the mailing date shall be presumed to be the day before the Settlement Claims Administrator received the Claim Form, unless a Class Member provides proof that establishes a different mailing date.

## 2.6     Class Member Opt-Outs.

(A)    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone number, and a statement indicating his or her intention to opt-out such as: "I opt out of the 310 Bowery Bar and 82 Stanton wage and hour settlement." ("Opt-Out Statement").  To be effective, an Opt-Out Statement must be mailed by the Bar Date.  In the event that the Settlement Claims Administrator receives an Opt-Out Statement after the Bar Date that does not contain a post-mark, the mailing date shall be presumed to

be the day before the Settlement Claims Administrator received the Opt-Out Statement, unless a Class Member provides proof that establishes a different mailing date. Named Plaintiffs may not opt-out of the settlement.

(B)    The end of the time period to opt-out of the settlement ("Opt-Out Period") shall be the Bar Date. The Bar Date will be the date that is sixty (60) days from the mailing of Notice to the Class Members.

(C)    The Settlement Claims Administrator will stamp the received date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof. The Settlement Claims Administrator will, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by email, and will provide an update to any such list within one (1) day should the Settlement Claims Administrator receive an Opt-Out Statement after the Opt-Out Period. The Settlement Claims Administrator will retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files.

(D)    Any Class Member who does not submit an Opt-Out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Judgment in this case, and have any Released Class Claims released and dismissed with prejudice regardless of whether the Class Member timely completes and returns a Claim Form. Only those Class Members who timely complete and return a Claim Form post-marked by the Bar Date will be deemed Authorized Claimants. Defendants will only fund amounts allocated to each Authorized Claimant who returns a timely Claim Form, except for the amounts otherwise provided for in Section 3 herein.

**2.7    Objections to Settlement.**

(A)    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be mailed by the Bar Date. The statement must include all reasons for the objection and any reasons not included in the statement will not be considered. The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email no later than three (3) days after receipt thereof. Class Counsel will file the date-stamped objections with their Motion for Final Approval. In the event that the Settlement Claims Administrator receives an objection after the Bar Date that does not contain a post-mark, the mailing date shall be presumed to be the day before the Settlement Claims Administrator received the objection, unless a Class Member provides proof that establishes a different mailing date.

(B)     An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-Out Statement may not submit objections to the Settlement.

(C)     The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.8     Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)     No later than seven (7) calendar days before the Fairness Hearing, Plaintiff will submit a Motion for Judgment and Final Approval.  The Fairness Hearing shall be held at the Court's convenience. Defendants will not oppose the Motion for Judgment and Final Approval provided it is consistent with the terms of this Settlement Agreement.

(B)     At the Fairness Hearing and in the Motion for Final Approval and Dismissal, the Parties will request that the Court, among other things: (1) certify the NYLL Class and FLSA Class for purposes of settlement only; (2) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (3) order the Settlement Claims Administrator to distribute Settlement Checks to Authorized Claimants; (4) order any Court-approved Service Awards, to be paid from the QSF, to individuals as described in this Agreement; (5) order Court-approved attorneys' fees and costs to be paid to Class Counsel from the QSF; (6) order Court-approved Claims Administrator's fees to be paid to the Claims Administrator from the QSF; (7) order the dismissal with prejudice of all claims asserted in the Litigation and the claims of all Class Members who did not opt-out; (8) order entry of Final Judgment in accordance with this Agreement; and (9) retain jurisdiction as necessary for the purpose of enforcing the administration of the settlement.

(C)     If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(D)     If any reconsideration and/or appellate review of the failure to enter a Final Approval Order is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.  In that event, any class and/or collective certified for purposes of settlement only shall be automatically decertified, and Defendants may contest whether this Litigation

should be maintained as a class action or collective action and contest the merits of the claims asserted by Plaintiff in this action.

(E)    If the Court fails to enter a Final Approval Order, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Authorized Claimants under the Agreement.  The content of such notice shall be agreed to by the Parties and such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notices.

If the Court fails to enter a Final Approval Order and any motion for reconsideration and/or appellate review of the failure to enter a Final Approval Order is denied, any amounts paid by Defendants to the Settlement Claims Administrator shall be returned to Defendants within fifteen (15) days after the Court files an opinion or order rejecting or otherwise not approving the settlement.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Amount.

(A)    Defendants will pay the Maximum Settlement Amount of Seven Hundred and Fifty Thousand Dollars and Zero Cents ($750,000.00), which shall fully resolve and satisfy any claim for attorneys' fees, expenses and costs approved by the Court, any and all amounts to be paid to Authorized Claimants as set forth herein, all applicable Service Awards, and Settlement Claims Administrator costs and fees.  Other than any applicable employer-side payroll taxes typically borne by the employer, Defendants shall not be required to pay more than the Maximum Settlement Amount.

(B)    Defendants shall fund the Qualified Settlement Fund as follows:

(1)    In the event that 30% or less of the Net Settlement Fund is claimed by Class Members, Defendants shall fund the entire Final Payable Amount into the Qualified Settlement Fund in one installment within ten (10) days of the Effective Date.

(2)    In the event that more than 30% of the Net Settlement Fund is claimed by Class Members, Defendants shall fund the Final Payable Amount as follows:  50% of the Final Payable Amount shall be funded into the Qualified Settlement Fund within seven (7) days of the Effective Date and the remaining 50% of the Final Payable Amount shall be funded into the Qualified Settlement Fund no later than twelve (12) months after the Effective Date.

(C)    In the event that more than 30% of the Net Settlement Fund is claimed by Class Members and Defendants fail to make the initial payment as set forth in paragraph

3.1(B)(2), Class Counsel shall notify Defendants of the default via email to Defendants' Counsel Aaron Solomon at asolomon@kaufmandolowich.com. If Defendants do not cure the default within seven (7) calendar days of the notice, the entire Final Payable Amount owed by Defendants under this Agreement shall be immediately due in its entirety, less any amounts already paid. In the event of any litigation to enforce a breach of this Agreement for the failure to pay monies owed under the Agreement, Plaintiff shall be entitled to receive from the Defendants reasonable attorneys' fees and costs up through and including the appellate process.

(D)    Nothing herein shall prevent Defendants from funding the Qualified Settlement Fund, in whole or in part, prior to the dates set forth below. However, if Defendants elect to deposit monies into the QSF prior to the filing of the Motion for Final Approval and Dismissal, and if the Court fails to enter the Final Approval Order, then any amounts deposited into the QSF shall be returned to Defendants.

## 3.2    Settlement Amounts Payable as Administration Fees, Attorneys' Fees, and Attorneys' Expenses and Costs.

(A)    Prior to the Fairness Hearing, Class Counsel shall petition the Court for reimbursement of their reasonable litigation costs and expenses to be paid from the Qualified Settlement Fund. In addition, Class Counsel shall petition the Court for no more than one-third of the Maximum Settlement Amount to be paid from the Qualified Settlement Fund as an award of attorneys' fees. Defendants will not oppose such applications provided the applications are consistent with the terms of this Agreement. Defendants shall have no additional liability for attorneys' fees and costs.

(B)    The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any reduction by the Court of Class Counsel's application for attorneys' fees and costs shall become part of the Net Settlement Fund and shall be subject to allocation and the reversion of Unredeemed Funds as defined above.

(C)    Prior to the Fairness Hearing, Class Counsel will petition the Court for an award of administration fees not to exceed $25,000 to be paid out of the Qualified Settlement Fund to the Claims Administrator.

(D)    The substance of the application for administration fees is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for administration fees shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and

Final Approval. Any reduction by the Court of any administration fees shall become part of the Net Settlement Fund and shall be subject to allocation and the reversion of Unredeemed Funds as defined above.

**3.3    Service Awards to Named Plaintiffs.**

(A)    In return for services rendered to the Class Members, the Named Plaintiff will seek a service award of $10,000. Defendants will not oppose Plaintiff's application for a Service Award provided the application is consistent with the terms of this Agreement.

(B)    The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal. Should all or part of any Service Award sought not be approved by the Court, the sum shall become part of the Net Settlement Fund and shall be subject to allocation and the reversion of Unredeemed Funds as defined above.

**3.4    Net Settlement Fund and Distribution to Authorized Claimants.**

(A)    Each Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following terms:

(1)    Notwithstanding the formulas agreed upon by the Parties, any Class Members who previously executed a release of wage and hour claims against Defendants during the pendency of the litigation shall only receive the Alternative Minimum Benefit. The Net Settlement Fund shall be reduced by the total amount of the Alternative Minimum Benefit payments available to be claimed by all of said Class Members.

(2)    After the total amount of Alternative Minimum Benefit payments available to be claimed by all qualifying Class Members pursuant to Section 3.4(A)(1) is subtracted from the Net Settlement Fund, the remaining portion of the Net Settlement Fund shall be allocated as set forth below:

(a)    **The Tip Credit and Notice Fund**

(i)    The Tip Credit and Notice Fund shall be an amount equal to 95% of the Net Settlement Fund.

(ii)    Each Class Member will receive one (1) point ("Tip Credit Point") for every hour paid at the tip credit minimum wage at 310 Bowery Bar and 82 Stanton between February 22, 2018 and May 8, 2024.

        (iii)    The Tip Credit and Notice Fund will be divided by the aggregate number of Tip Credit Points accrued by all Class Members ("Tip Credit Point Value").

        (iv)    Each Class Member's total Tip Credit Points will be multiplied by the Tip Credit Point Value to determine his or her share of the Tip Credit and Notice Fund.

    (b)    **The Tip Disgorgement Fund**

        (i)    The Tip Disgorgement Fund shall be an amount equal to 5% of the Net Settlement Fund.

        (ii)    Each Class Member will receive one (1) point ("Tip Disgorgement Point") for every dollar received in tips paid by credit card while working in a Covered Position at 310 Bowery Bar only between February 22, 2018 and May 8, 2024.

        (iii)    The Tip Disgorgement Fund will be divided by the aggregate number of Tip Disgorgement Points accrued by all Class Members ("Tip Disgorgement Point Value").

        (iv)    Each Class Member's total Tip Disgorgement Points will be multiplied by the Tip Disgorgement Point Value to determine his or her share of the Tip Disgorgement Fund.

    (3)    Each Class Member's share of the Tip Credit and Notice Fund and the Tip Disgorgement Fund shall be added together to determine his or her Individual Settlement Amount.

    (4)    Settlement Checks shall be issued only to Authorized Claimants.

(C)    Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations.

(D)    No later than fifteen (15) days after Defendants make an installment payment or full payment to the Qualified Settlement Fund, the Claims Administrator shall mail to all Authorized Claimants their share of the installment payment or full payment. The Claims Administrator shall use reasonable efforts to make an additional mailing to Authorized Claimants whose checks are returned because of incorrect addresses.  Such efforts shall include using Social Security Numbers to obtain updated address information. The Named Plaintiff will be considered an Authorized Claimant and will receive settlement checks without filing a claim form.

(E)     No later than five (5) days after Defendants make an installment payment or full payment to the Qualified Settlement Fund, the Claims Administrator shall mail (or wire) to Class Counsel their share of attorneys' fees and costs due from that installment payment or full payment.

(F)     Authorized Claimants will have ninety (90) calendar days from when the Settlement Checks are issued to redeem their settlement payments.  If an Authorized Claimant does not redeem their Settlement Check within the 90-day period, their Settlement Check will be void and a stop-payment will be placed.  If a Class Member contacts Class Counsel or the Claims Administrator up to one hundred eighty (180) calendar days from when the Settlement Checks for the final installment of settlement payments are issued to request a reissued check, the Claims Administrator will, upon confirming that the Settlement Check in question has not been redeemed, issue a stop payment on the Class Member's original settlement check and reissue that Class Member's Settlement Check. All such reissued checks will be valid for forty-five (45) days after the date of issue and will be void thereafter. For avoidance of doubt, Authorized Claimants may request replacement checks of the entirety of any portion of their Individual Settlement Amount that they did not redeem for up to one hundred eighty (180) calendar days from when the Settlement Checks are issued after the Final Payable Amount is paid in full.

(G)     Any money still remaining in the Net Settlement Fund on the later of one hundred eighty-one (181) days after the Settlement Checks for the final installment of settlement payments are issued or fifty (50) days after the last reissued settlement check is issued, whichever is later, shall revert back to Defendants.

**3.5     Tax Characterization of Payments to Class Members.**

(A)     All payments made to Authorized Claimants of the Alternative Minimum Benefit shall be non-wage income (for which a Form 1099 will be issued) and not be subject to payroll taxes and withholding.

(B)     All payments made to Authorized Claimants from the Net Settlement Fund, other than payments of the Alternative Minimum Benefit, shall be allocated as follows: fifty percent (50%) of such payments shall be allocated to the payment of wages (for which a Form W-2 will be issued) subject to taxes and withholdings, and fifty percent (50%) shall be non-wage income and not be subject to payroll taxes and withholdings (for which a Form 1099-MISC will be issued).

(C)     The Service Award payment shall be non-wage income (for which a Form 1099-MISC will be issued) and not be subject to payroll taxes and withholdings.

(D)     Defendants will provide the Settlement Claims Administrator such information in Defendants' possession as is necessary for the Settlement Claims Administrator to make proper tax withholdings, issue and file tax-related forms, and comply with all tax reporting obligations.

## 4.    RELEASE OF CLASS CLAIMS

**4.1**    **Release of Class Claims.**  Upon the Effective Date, and except as to such claims as may be created by this Agreement, Plaintiff and all Class Members who have not opted out of this Settlement (regardless of whether they submit a Claim Form), on their behalf and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, creditors, estates, trustees, and beneficiaries fully and forever release Defendants and Releasees from any and all claims demands, rights, actions, causes of action, liabilities, damages, losses, obligations, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent,  that have been brought or could have been brought under the New York Labor Law, the New York Hospitality Industry Wage Order, the New York Wage Order for Miscellaneous Industries, the New York Minimum Wage Act, the New York Wage Theft Prevention Act, and/or any other rule, regulation, statute, law (other than the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the regulations thereunder), or ordinance  that governs the payment of wages and is promulgated by any city, county, town, village, or municipality within the state of New York or in any other state or locality from the beginning of time through the date that the Court issues the Final Approval Order including without limitation any such claims for statutory, constitutional, contractual or common law claims for unpaid wages, minimum wages or overtime wages, administrative or other mandatory charges, failure to maintain and furnish employees with proper Rate of Pay notices and/or wage statements, claims to recover the tip credit, payment of final wages, earned sick time, accrued benefit time, prevailing wages, commissions, spread of hours, unpaid gratuities, service charges, call-in payments, meal credit claims, uniform maintenance fees, meal break claims, liquidated damages, statutory penalties, living wage, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorney's fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief.

**4.2**    **Release of Claims for Authorized Claimants.**  Plaintiff and each Class Member who is also an Authorized Claimant (and/or endorses their Settlement Check) on their behalf and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, creditors, estates, trustees, and beneficiaries shall forever and fully release Defendants and Releasees from any and all claims demands, rights, actions, causes of action, liabilities, damages, losses, obligations, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent,  that have been brought or could have been brought under the FLSA and the regulations thereunder from the beginning of time through the date that the Court issues the Final Approval Order including without limitation any such claims for unpaid wages, liquidated damages, equitable relief, improper taking of a tip credit, and attorneys' fees, and costs related to such claims.

By the filing and entering of the Final Approval Order, the Class Members give up their right to individual damages in connection with any administrative, arbitration, or court

proceeding by the Attorney General, New York State Department of Labor and/or the United States Department of Labor covering the released claims, and if Class Members are awarded money damages, they shall assign to Defendants their right and interest to such money damages. Should any agency or third-party seek to assert on their behalf any of the released claims, Settlement Class members shall designate Defendants as the recipient of, or otherwise pay over to Defendants, any recovery (whether by way of judgment or settlement) obtained as to such claims.

**4.3**    **Settlement Checks.**  All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

> **"RELEASE OF CLAIMS:**
>
> By endorsing this check, I consent to join the case entitled *Marin, v. 310 Bowery Group, LLC d/b/a 310 Bowery Bar, et al.* and I hereby release Defendants and Releasees from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour law, rule or regulation brought or which could have been brought in the litigation, including, but not limited to, minimum wage and overtime claims."

Any modification or amendment of the above-language by the Class Member, at Defendants' discretion, may not be accepted, and may void the Settlement Check. The Administrator shall provide Defendants signed copies of each Settlement Check after they have been cashed.

**4.4**    **Denial of Liability.**

Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (1) avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation, and (2) put the potential litigation, and all disputes between the Parties, to rest. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants or the Releasees, nor as an admission that a class should be certified for any purpose other than settlement purposes.

**5.**    **INTERPRETATION AND ENFORCEMENT.**

**5.1**    **Cooperation Between the Parties; Further Acts**.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2**    **No Assignment.**  Class Counsel and Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.3    **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4    **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5    **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6    **Captions.**  The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.8    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.9    **Severability.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.10   **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.11   **When Agreement Becomes Effective; Counterparts.**  Subject to Court-approval, this Agreement shall become effective upon its full execution.  The Parties may execute this

Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.12    **Signatures.**  This Agreement is valid and binding if signed by Plaintiff and Defendants' authorized representatives.

5.13    **Facsimile, Electronic, and Email Signatures.**  Any signature made or electronically made and/or transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.14    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.15    **CAFA Notice.** Defendants' Counsel shall timely provide notices not later than 10 days after the entry of the Preliminary Approval Order , as required by the Class Action Fairness Act ("CAFA") and provide copies of such notices to Class Counsel simultaneous with providing such notice.

**Plaintiff:**

_____    Date: _____, 2025
Gina Marin

*(Signed: 2/19/2025)*

**Defendants:**

_____    Date: _____, 2025
310 Bower Group, LLC
By:_____
Its:_____

_____    Date: _____, 2025
Epstein's Bar, LLC
By:_____
Its:_____

_____    Date: _____, 2025
Richard Aurigemma

Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.12    **Signatures.**  This Agreement is valid and binding if signed by Plaintiff and Defendants' authorized representatives.

5.13    **Facsimile, Electronic, and Email Signatures.**  Any signature made or electronically made and/or transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.14    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.15    **CAFA Notice.** Defendants' Counsel shall timely provide notices not later than 10 days after the entry of the Preliminary Approval Order , as required by the Class Action Fairness Act ("CAFA") and provide copies of such notices to Class Counsel simultaneous with providing such notice.

**Plaintiff:**

_____ Date: _____, 2025
Gina Marin


**Defendants:**

_____ Date: 2/19/2025 , 2025
310 Bower Group, LLC
By:_____Richard Aurigemma_____
Its:_____Managing partner_____

_____ Date: 2/19/2025 , 2025
Epstein's Bar, LLC
By:_____Richard Aurigemma_____
Its:_____Managing partner_____

_____ Date: 2/19/2025 , 2025
Richard Aurigemma

Docusign Envelope ID: 8146056A-9D73-4854-A6D2-76360C1FBA62

# EXHIBIT A

**COVER LETTER (to be sent on Settlement Claims Administrator letterhead)**

DATE

NAME
ADDRESS
CITY, STATE ZIP CODE

Re:    **NOTICE OF CLASS ACTION SETTLEMENT WITH**
          **310 BOWERY BAR AND 82 STANTON BARS IN MANHATTAN**
          (*Marin, v. 310 Bowery Group, LLC,* No. 24 CV 01340)

Dear [NAME],

According to 310 Bowery Bar and 82 Stanton's records, you worked as a tipped food-service employee at 310 Bowery Bar and/or 82 Stanton in Manhattan during the time period covered by a class action lawsuit for unpaid wages.  The Parties have reached a settlement in that lawsuit under which you are eligible to receive a portion of the settlement.   Enclosed herein is a Court approved Notice and Claim Form.  **In order to receive payment under the settlement, you must sign the enclosed form entitled "CLASS MEMBER CLAIM FORM." You will not receive money from the settlement unless you submit a Claim Form by [DATE].  In order to receive your settlement amount, both these forms must be mailed or emailed to the address listed in the Claims Form.**

For full information about the settlement and how to claim your share of the settlement, please contact Plaintiff's attorney Josef Nussbaum at (212) 688-5640 or jnussbaum@jk-llp.com.

Sincerely,

[Settlement Claims Administrator]

## <u>NOTICE OF PROPOSED CLASS ACTION LAWSUIT SETTLEMENT AND FAIRNESS HEARING</u>

**TO:    PERSONS WHO WORKED AS A TIPPED FOOD-SERVICE EMPLOYEE AT 310 BOWERY BAR AND/OR 82 STANTON IN MANHATTAN BETWEEN FEBRUARY 22, 2018 AND MAY 8, 2024.**

Based on information in 310 Bowery Bar and 82 Stanton's records, you were employed as a tipped food-service employee at 310 Bowery Bar and/or 82 Stanton in Manhattan between February 22, 2018 and Janaury 13, 2025 and are entitled to participate in the proposed settlement of the case captioned *Marin, v. 310 Bowery Group, LLC,* No. 24 CV 01340 (S.D.N.Y.) (the "Lawsuit").   The Lawsuit was brought by Gina Marin against 310 Bowery Group, LLC d/b/a 310 Bowery Bar, Epstein's Bar d/b/a 82 Stanton, and Richard Aurigemma (collectively "310 Bowery Bar and 82 Stanton" or "Defendants").

Under the terms of the parties' settlement ("Settlement" or "Settlement Agreement"), you may claim money under the Settlement.  **A CLAIM FORM IS ENCLOSED WITH THIS NOTICE. YOU WILL RECEIVE MONEY FROM THIS SETTLEMENT ONLY IF YOU RETURN THE ATTACHED CLAIM FORM TO THE CLAIMS ADMINISTRATOR ON OR BEFORE [INSERT DATE].**

| 1.   WHAT IS THE PURPOSE OF THIS NOTICE? |
|---|

**PLEASE READ THIS NOTICE CAREFULLY.**  It contains important information about your rights concerning the settlement of the Lawsuit.  If the Court approves the Settlement Agreement, each Class Member will be bound by its terms unless he/she affirmatively opts-out of the Settlement Agreement.

The Court has ordered that this Notice be sent to you to inform you of your rights under the Settlement Agreement resolving the Lawsuit.

| 2.   WHAT IS THIS CASE ABOUT? |
|---|

The Lawsuit asserts claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") alleging that 310 Bowery Bar and 82 Stanton failed to properly compensate certain tipped food-service employees for all hours worked, including overtime for hours worked in excess of forty per workweek.  The Lawsuit also alleges that employees were not provided with the appropriate notices that 310 Bowery Bar and 82 Stanton was required to provide them with. Finally, the Lawsuit alleges that 310 Bowery Bar misappropriated portions of employees' tips.

Defendants deny these allegations in their entirety and maintain that all tipped food-service employees were paid properly and received all monies owed.  The parties have entered into this Settlement Agreement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.  The Court has not made any ruling on the merits of the claims in the Lawsuit, and no party has prevailed in this action.

## 3. WHO IS INCLUDED IN THE CLASS?

The parties have agreed to settle the Lawsuit for a class consisting of all tipped food-service employees employed at 310 Bowery Bar and/or 82 Stanton between February 18, 2022 and May 8, 2024 ("Class Members"). You have received this notice because 310 Bowery Bar and/or 82 Stanton has identified you as tipped food-service employee eligible to receive a portion of the Settlement.

## 4. HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED?

If the Settlement Agreement is given final approval by the Court, Defendants will pay up to a maximum of $750,000.00 in total settlement funds. If the Court also approves the payments set forth below, the following payments and expenses will be deducted from the $750,000.00 prior to distribution of the settlement funds to Class Members:

1. Attorneys' Fees and Costs: Class Counsel will apply to the Court for approval of costs and attorneys' fees of one-third of the Settlement Fund after deducting their costs.

2. Service Awards: If the Court approves such payment, $10,000 will be paid to the Named Plaintiff Gina Marin.

3. Claims Administrator Costs: Class Counsel will apply to the Court for recovery of all costs of administration of this settlement.

4. If the Court approves the payments listed above, the remaining Settlement Fund (the "Net Settlement Fund") will be allocated to Class Members based on the hours worked between February 22, 2018 and May 8, 2024 and the amount of credit card tips they received at 310 Bowery Bar between February 22, 2018 and May 8, 2024.

- Class Member who previously executed a release of wage and hour claims against Defendants will be allocated a settlement share of $150.

- Once checks are issued, they will be valid for only 180 days.

- For more information about how individual settlement awards are calculated, you may contact Plaintiffs' Counsel, Josef Nussbaum at Joseph & Kirschenbaum LLP, 32 Broadway, Suite 601, New York, NY 10004 at 212-688-5640 or jnussbaum@jk-llp.com.

**IF YOU DO NOTHING, YOU WILL REMAIN PART OF THE CASE, NOT RECEIVE PAYMENT AND STILL BE BOUND BY THE TERMS OF THIS SETTLEMENT AGREEMENT.**

## 5. HOW CAN I COLLECT MY SHARE OF THE SETTLEMENT?

**In order to collect your share of the Settlement, you must fill out the enclosed Claim Form. If you do not fill out a Claim Form, you will not receive any money from this settlement.** Attached to this Notice is a Claim Form which you must fill out and mail, postmarked on or before _____,_____ , to:

### CLAIMS ADMINISTRATOR'S INFO

310 Bowery Bar and 82 Stanton cannot retaliate against you for participating in this Settlement and/or submitting a Claim Form.

It is your responsibility to retain proof of timely mailing or submission of a Claim Form until receipt of your settlement payment. If you move, you must send the Claims Administrator your new address. It is your responsibility alone to provide a forwarding address to the United States Post Office and your current address to the Claims Administrator.

If you are found eligible to participate in the Settlement, you should not expect to receive any payment until the Settlement is final, which will likely be several months away.

## 6. WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?

Upon the Order Granting Final Approval of the Settlement Agreement, and except as to such rights or claims as may be created by it, each Class Member, on his or her behalf, and on behalf of his or her respective current, former, or future, heirs, spouses, executors, administrators, agents, and attorneys, creditors, estates, trustees, and beneficiaries fully releases and discharges Defendants as well as Defendants' respective present and former affiliates, related entities, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities and/or any of their present and former officers, partners, employees, owners, members, directors, agents, attorneys, investors, shareholders, insurers or reinsurers, shareholders, trustees, estates, transferees, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, in their individual and/or representative capacities, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them ("Releasees"), from any and all claims demands, rights, actions, causes of action, liabilities, damages, losses, obligations, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent,  that have been brought or could have been brought under the New York Labor Law, the New York Hospitality Industry Wage Order, the New York Wage Order for Miscellaneous Industries, the New York Minimum Wage Act, the New York Wage Theft Prevention Act, and/or any other rule, regulation, statute, law (other than the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") and the regulations thereunder), or ordinance  that governs the payment of wages and is promulgated by any city, county, town, village, or municipality within the state of New York or in any other state or locality from the beginning of time through the date that the Court issues the Order Granting Final Approval of the Settlement Agreement including

without limitation any such claims for statutory, constitutional, contractual or common law claims for unpaid wages, minimum wages or overtime wages, administrative or other mandatory charges, failure to maintain and furnish employees with proper Rate of Pay notices and/or wage statements, claims to recover the tip credit, payment of final wages, earned sick time, accrued benefit time, prevailing wages, commissions, spread of hours, unpaid gratuities, service charges, call-in payments, meal credit claims, uniform maintenance fees, meal break claims, liquidated damages, statutory penalties, living wage, any related wage and hour claims, interest on such claims, penalties, damages, liquidated damages, attorney's fees, expenses, disbursements, litigation costs and fees, restitution, or equitable relief.

In addition, if you sign and return a Claim Form that is accepted pursuant to this Settlement, you, on your own behalf, and on behalf of your respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, creditors, estates, trustees, and beneficiaries shall forever and fully release Defendants and Releasees from any and all claims demands, rights, actions, causes of action, liabilities, damages, losses, obligations, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, that have been brought or could have been brought under the FLSA and the regulations thereunder from the beginning of time through the date that the Court issues the Final Approval Order including without limitation any such claims for unpaid wages, liquidated damages, equitable relief, improper taking of a tip credit, and attorneys' fees, and costs related to such claims.

## 7. HOW DO I OPT OUT OF THE SETTLEMENT CLASS?

You have the option of opting-out of the Settlement Agreement if you do not want to participate in the Settlement or be bound by the release of claims described above.  To opt-out of the Settlement Agreement you must do so by _____.  If you do not opt out, you will be bound by the terms of the Settlement Agreement.  To opt out, you must mail a signed letter which specifically states, "I elect to exclude myself from the settlement in *Marin, v. 310 Bowery Group, LLC,* No. 24 CV 01340 (S.D.N.Y.)" postmarked no later than _____. You must include your name and address in the letter.  If you choose to opt out, send your letter to:

[CLAIMS ADMINISTRATOR]

## 8. WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?

If you have not opted out of the Settlement, and if you wish to present objections to the proposed settlement at the Fairness Hearing, you must first do so in writing.  You are not required to submit an objection.  Written objections must be postmarked no later than _____ and sent to:

[CLAIMS ADMINISTRATOR]

Written objections must contain your name and address, must be signed by you, and must include reference to the matter of *Marin, v. 310 Bowery Group, LLC,* No. 24 CV 01340 (S.D.N.Y.).  If you opt-out of the settlement, you may not also object to the settlement.

## 9. WHEN IS THE FAIRNESS HEARING?

A hearing before the Honorable _____, will be held on _____ at _____ at the United States District Court for the Southern District of New York, _____ (the "Fairness Hearing"). The purpose of this hearing will be for the Court to determine whether the Settlement Agreement is fair, adequate, and reasonable and should be approved by the Court. The Court will consider any comments or objections filed in accordance with the procedures described above.

## 10. HOW CAN I EXAMINE COURT RECORDS?

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings. For more detailed information, you are advised to refer to the underlying documents and papers on file with the Court.

Additionally, if you have questions about this Notice or want additional information, you can contact Josef Nussbaum of Joseph & Kirschenbaum LLP at 212-688-5640 or jnussbaum@jk-llp.com or the Claims Administrator at the address/phone number listed above.

## <u>CLASS MEMBER CLAIM FORM</u>

*Marin, v. 310 Bowery Group, LLC,* No. 24 CV 01340 (S.D.N.Y.)

**TO SHARE IN THE SETTLEMENT, YOU <u>MUST</u> COMPLETE, SIGN AND RETURN THIS CLAIM FORM. YOU WILL NOT RECEIVE ANY PAYMENT FROM THE SETTLEMENT UNLESS YOU SUBMIT THIS CLAIM FORM. THE CLAIM FORM MUST BE POSTMARKED OR E-MAILED NO LATER THAN _____, \_\_\_\_**

*Marin, v. 310 Bowery Group, LLC,* No. 24 CV 01340
**[CLAIMS ADMINISTRATOR]**
**[ADDRESS / PHONE/FAX]**
**[Email address]**

310 Bowery Bar and/or 82 Stanton's records of indicate that you were employed by 310 Bowery Bar and/or 82 Stanton as a tipped food-service employee between February 18, 2022 and May 8, 2024. Based on the hours you worked and the credit card tips you received according to 310 Bowery Bar and/or 82 Stanton's records, your estimated Individual Settlement Amount is approximately _____. Please note that this is just an estimate and is subject to change.

By signing and returning this form, you are claiming your Individual Settlement Amount and opting-in to the above-captioned lawsuit brought to recover wages under the Fair Labor Standards Act and New York Labor Law. If you do not sign and return this form, you are still bound by the terms of the Settlement unless you opt-out.

By signing and returning this form, you acknowledge that you are releasing claims against Defendants and Releasees, as set forth in greater detail in the Notice of Settlement.

Date: _____       _____
                                                          (Sign your name here)

### <u>CORRECTIONS OR ADDITIONAL INFORMATION</u>

Write any name and address corrections below if any is necessary <u>**OR**</u> if there is no preprinted data to the left, please provide your name and address here:

_____
_____
_____
_____

Daytime Telephone Number:

Evening Telephone Number: