

Kaufman Dolowich LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797

Telephone: 516.681.1100

www.kaufmandolowich.com

**Aaron Solomon, Esq.**
ASolomon@kaufmandolowich.com

July 15, 2025

**<u>VIA ECF</u>**
Hon. Sarah L. Cave
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Gina Marin, et. al. v. 310 Bowery Group, LLC, et. al.,* Docket No. 24-CV-01340

Dear Judge Cave:

      We represent the Defendants. We write, to oppose the portion of Plaintiff's Motion for Final Approval that seeks approval of attorneys fees[1] and to respectfully request that the Court impose appropriate relief to remedy misconduct by Class Counsel because of his violation of the Parties Settlement Agreement (the "Agreement") and the Court's Order preliminarily approving this settlement (the "Preliminary Approval Order").[2] Defendants do not oppose any other aspect of the Motion for Final Approval.

      Pursuant to the terms of the Agreement, a Court-approved settlement notice (the "Notice") would be sent to the members of the Class who would be afforded 60 days to submit an "opt-in" form. *See Dkt. #* 97-1 at Section 2.5(D). Class Members who timely returned their claim form to the Claims Administrator (the "Authorized Claimants") would release any and all of their wage and hour claims under the Fair Labor Standards Act (the "FLSA") as well as any and all of their wage and hour claims arising under the New York Labor Law (the "NYLL") and/or any other state or local statute governing the payment of wages (the "State Claims"). Class Members who did not return a claim form would only release their State Claims unless they opted out of the settlement.[3]

      The Agreement clearly states that the Notice would be dispatched to the Class once via first class mailing. *See Dkt. #* 97-1 at Section 2.5(B). If a Class Members' notice was returned undeliverable, the Claims Administrator would perform one skip trace and re-mail the notice. *See Dkt. #* 97-1 at Section 2.5(B). The Preliminary Approval Order endorsed the foregoing procedure, which was carefully negotiated by the Parties. *See Dkt. #* 93 at pg. 6. Nothing in the Agreement or the Preliminary Approval Order permitted any alternate means of contacting Class Members to apprise them of the settlement.

---

[1] Section 2.8(a) of the Parties' Settlement Agreement affords Defendants the right to oppose the Motion for Final Approval if it is inconsistent with the terms of the Parties' settlement.
[2] This letter is submitted pursuant to Rule III of the Court's individual practices because the issues discussed herein are narrow and can be resolved at the upcoming fairness hearing.
[3] None of the Class Members elected to opt-out.

The Claims Administrator mailed the Notice to the Class Members on May 8, 2025. As part of its duties, the Claims Administrator provided the Parties with regular updates regarding the number of claim forms submitted. See Exhibit A. The Settlement Class is comprised of 275 individuals. As of June 6, 2025, the Claims Administrator had received a total of six claim forms. This low response rate was concerning to both Plaintiffs and Defendants, as both Parties admittedly want the settlement to be approved. See Exhibit A. Thereafter, the number of claim forms received by the Claims Administrator increased significantly. The Claims Administrator reported that it had received 22 claim forms as of June 20, 2025; 45 claim forms as of June 27, 2025; and a total of 64 claim forms (excluding the Named Plaintiff) as of July 8, 2025, the expiration date of the 60-day claim period.

On or about June 30, 2025, Defendants learned that Class Counsel may have been contacting Class Members directly to inform them about the settlement and encourage them to return their claim forms. The Agreement and Preliminary Approval Order make clear that Class Members must be informed about the settlement through the Notice sent by the Claims Administrator via first-class mail. No other means of notification was agreed upon by the Parties or judicially endorsed by the Court.

Defendants contacted Class Counsel to investigate his conduct. Class Counsel did not deny that he was directly contacting Class Members. Defendants told Class Counsel that any concern about the level of participation by Class Members did not justify self-help. Defendants emphasized that Class Counsel should have consulted with them to discuss any concern about Class Member participation and seek agreement on an alternative means of notification, which would then be submitted to the Court for approval.

Class Counsel incorrectly assumes that because Class Members are "his clients," he is free to contact them by any means he chooses. However, under the FLSA, Class Members cannot release their claims unless they affirmatively consent to join a collective action under 29 U.S.C. § 216(b) and thereby submit to the Court's jurisdiction. This requirement is analogous to opting in to a conditionally certified FLSA collective.

In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989), the Supreme Court emphasized that notice to potential FLSA collective members must be administered through a single, Court-authorized process in order to avoid "the potential for abuse and confusion." The Court's supervisory role is critical to ensure the integrity of collective actions. As the court in *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 164 (N.D.N.Y. 2008), explained, failing to limit notification to a single authorized method would undermine the statutory intent of the FLSA, which envisions a significant role for the Court in prescribing the terms and conditions of communications from named plaintiffs to potential collective members.

Class Counsel cannot simply disregard the Court-approved notification procedure; doing so renders both the Settlement Agreement's notification process and the Court's oversight of same meaningless. Courts have the authority—and indeed the obligation—to sanction attorneys who circumvent or violate the court-supervised notice process. *See e.g. Panora v. Deenora Corp.,* 521 F.Supp.3d 177, 180 (E.D.N.Y. 2021) (imposing sactions where Plaintiff's counse. See, e.g., Panora v. Deenora Corp., 521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021) (imposing sanctions where Plaintiff's

counsel improperly used the defendant employer's logo on unauthorized mailings that enclosed collective action notices). Although Class Counsel plainly violated the Preliminary Approval Order, Defendants chose not to burden the Court or jeopardize the settlement unless actual harm resulted. Class Counsel was expressly advised of this position. Ultimately, harm did occur.

Class Counsel now seeks an award of $250,000 in attorneys' fees and costs, despite knowing that the Agreement expressly permits the Court to reduce such fees and reallocate any excess fees to the Authorized Claimants especially if the requested amount exceeds the value of the claims made by Class Members. *See Dkt. # 97-1 at Section 3.2 (B).* Under the Agreement, the sum of $465,000 was made available for claims by the 275 Class Members including the Named Plaintiff and six Opt-in Plaintiffs who consented to join this action before it was settled. If the Named Plaintiff and six Opt-in Plaintiffs are removed from the class, and the value of their claims are deducted, then the sum of $388,465.27[4] is available for the claims of the 268 remaining class members.

As of June 26, 2025, the total value of claims made under the settlement was $195,812.47, far short of the requested fee of $250,000, an amount that the total claim value must comfortably exceed to permit recovery of the fee sought. Class Counsel needed to ensure that the value of the Class Members' claims sufficiently increased before July 8, 2025, the "bar date" for new claims.

24 Class Members submitted claims between June 30, 2025, and July 8, 2025. These 24 class members represent 9% of the class of 268. However, the value of their claims ($92,166.19) is *23%* of the total amount available for all claims ($388,465.27). Suspiciously, 13 of the claim forms for these class members were postmarked on July 3, 2025. Six were postmarked on July 7, 2025. Moreover, the time records submitted by Josef Nussbaum, the attorney who primarily handled this case for Plaintiffs, reflect that he spent 15.5 hours between June 26, 2025, and July 6, 2025, performing "claims administration." The submission of claims should have proceeded in a neutral manner. The foregoing pattern demonstrates that opposing counsel facilitated the submission of claim forms in a manner inconsistent with neutral claims administration. Opposing counsel actively sought out favorable Class Members (to the exclusion of less favorable ones) to justify his excessive fee request. Unsurprisingly the ultimate value of the claims that were submitted ($287,978.66) exceeded Class Counsel's requested fee by a comfortable margin.

Class Counsel contends that his actions were motivated by a desire to ensure that Class Members did not release their FLSA claims without compensation. While Defendants do not dispute the validity or value of the claims submitted by class members, this justification does not excuse Class Counsel's blatant disregard for the notice procedures expressly set forth in the Preliminary Approval Order, nor does it warrant turning a blind eye to serious procedural violations simply to preserve a basis for Class Counsel's excessive fee request. Therefore, Defendants respectfully request that the Court appropriately reduce Class Counsel's fee award by $92,166.19, the amount attributable to the claims that were submitted because of Class Counsel's misconduct, and direct Class Counsel (and not the Class Members) to reimburse Defendants for reasonable attorney's fees they incurred in connection with this submission.

---

[4] The Claims Administrator supplied claims data that supports the calculations herein. The data is in Excel format and is difficult to upload to ECF. Moreover, it contains the personal contact information of Class Members. Defendants respectfully request permission to supply the Excel data for *in camera* review.

Hon. Sarah Cave
July 15, 2025
Page 4 of 4

      We thank the Court for its continued courtesies.

                                        Respectfully submitted,
                                        Kaufman Dolowich LLC

                                        Aaron N. Solomon

cc:     All counsel of record (via ECF)