UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GINA MARIN, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>310 BOWERY GROUP LLC d/b/a 310 Bowery Bar, EPSTEIN'S BAR LLC d/b/a Stanton Bar, and RICHARD AURIGEMMA,<br><br>Defendants. | CIVIL ACTION NO.: 24 Civ. 1340 (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

The parties in this putative collective and class wage-and-hour action entered into a settlement agreement (ECF No. 97-1 (the "Agreement")), which is now before the Court for final approval. (ECF No. 95 (the "Final Approval Motion")). Defendants[1] oppose only the portion of the Final Approval Motion seeking approval of attorneys' fees for Class Counsel,[2] whom Defendants contend engaged in misconduct in communicating with potential Class Members. (ECF Nos. 99 ("Defendants' Opposition"); 101). Following a hearing on the Final Approval Motion on July 17, 2025 (the "Fairness Hearing") (ECF Nos. 93; 94; 102; 103), the Court received supplemental submissions from the parties. (ECF Nos. 102; 105; 110).

For the reasons set forth below, Defendants' Opposition is overruled and the Final Approval Motion is GRANTED. By separate Order, the Court will enter final judgment.

---

[1] Defendants are 310 Bowery Group, LLC d/b/a 310 Bowery, Epstein's Bar, LLC d/b/a 82 Stanton Bar, and Richard Aurigemma. (ECF No. 1 ¶¶ 4–6, 8).
[2] Capitalized terms have the meaning defined in the Agreement unless otherwise indicated. (ECF No. 97 1).

1

## II. BACKGROUND

We incorporate by reference the factual and procedural background of this action set forth in the Court's March 24, 2025 Opinion & Order granting Lead Plaintiff Gina Marin's motion for preliminary approval of the class action settlement. See Marin v. 310 Bowery Grp. LLC, No. 24 Civ. 1340 (SLC), 2025 WL 893731, at *1–2 (S.D.N.Y. Mar. 24, 2025).[3] We set forth only the additional background necessary to analyze the Final Approval Motion and Defendants' Opposition.

### A. The Agreement

On January 13, 2025, the parties reached an agreement in principle to resolve the claims of "all tipped employees of [the Bars], including servers, bussers, and bartenders employed at those bars in Manhattan" between February 22, 2018 and May 8, 2024 for the amount of $750,000.00. Marin, 2025 WL 893731, at *2. (See ECF No. 97-1 § 1.23 (the "Maximum Settlement Amount")). As is relevant here, the Agreement provided that the Court-approved Notice would be sent to Class Members, who had 60 days to (i) complete and submit an "opt-in" form, and (ii) mail any statement of their intention to opt-out of the Agreement. (ECF No. 97-1 §§ 2.4, 2.5(D), 2.6). Marin and each Class Member who timely returned a Claim Form to the Claims Administrator (the "Authorized Claimants") would release all wage-and-hour claims under federal, state, and local law. (Id. § 4.2). Marin and all Class Members who did not opt out (regardless of whether they submitted a Claim Form) would only release their state and local law claims. (Id. § 4.1). Marin is entitled to a service award of $10,000.00 in recognition of her efforts as Named Plaintiff. (Id. § 3.3). Any funds remaining in the Net Settlement Fund on the later of

---

[3] Internal citations are omitted from case citations unless otherwise indicated.

181 days after the final installment of settlement payments or 50 days after the last reissued settlement check "shall revert back to Defendants." (Id. § 3.4(G)).

As to Notice, the Agreement instructed the Claims Administrator to send the Notice to the Class Members via first class mailing and to perform one "skip trace" and re-mailing for any Notices returned as undeliverable. (ECF No. 97-1 §§ 2.5(B)–(C)). The Court approved the Notice and the distribution procedure, see Marin, 2025 WL 893731, at *10–11, which Defendants assert "was carefully negotiated by the parties." (ECF No. 99 at 1).

As to Class Counsel's application for an award of attorneys' fees, the Agreement provided that Class Counsel could request "no more than one-third of the Maximum Settlement Amount"—i.e., $250,000.00—and that Defendants would "not oppose such application[] provided the application[] [was] consistent with the terms of th[e] Agreement." (ECF No. 97-1 § 3.2(A)).

B. **Claims Administrator's Communication with Class Members**

After receiving from Defendants' counsel contact information for known Class Members, on May 8, 2025, the Claims Administrator sent the Notice by first class mail to 275 Class Members. (ECF No. 98 ¶ 4). As to the 52 Notices returned as undeliverable, the Claims Administrator performed skip-tracing, resulting in corrected addresses for 50 Class Members, to whom the Settlement Administrator re-mailed the Notices, leaving two remaining as undeliverable. (Id.)

By the July 7, 2025 deadline, the Claims Administrator received 64 Claim Forms but no Opt-Out Statements or objections to the Agreement. (ECF No. 98 ¶¶ 5–9). As of July 9, 2025,

the toll-free number the Claims Administrator set up to receive inquiries from Class Members had received no calls. (Id. ¶¶ 10–12).

Ultimately, the Claims Administrator determined that there were 64 Authorized Claimants—or about 23.6% of the 275 Class Members to whom the Notice was sent—each of whom would receive a payment from the Net Settlement Fund under the Agreement. (Id. ¶ 6; see ECF No. 97-1 § 3.4).[4]

### C. Class Counsel's Communications with Class Members

As of late June 2025, only 22 of 275 Class Members—about 8% of the Class, representing $195,812.47 in claim value—had submitted claim forms. (ECF Nos. 99 at 3; 103 at 22; 105-1 ¶ 2). Lead Class Counsel, Josef Nussbaum, contacted the Named Plaintiff and the Opt-In Plaintiffs for their insight on the low response rate. (ECF No. 105-1 ¶ 4). Based on those conversations, Mr. Nussbaum "discovered that [] Defendants had not identified certain Class Members who were only entitled to the Alternative Minimum Benefit of $150 thus leading to these individuals being allotted a full share of the settlement" and resulting in more than 38% of the Net Settlement Fund going unclaimed. (Id. ¶ 5). The Named Plaintiff and the Opt-In Plaintiffs then communicated with their co-workers—i.e., potential Class Members—some of whom then contacted Mr. Nussbaum. (Id. ¶ 6).

Aside from Marin, Mr. Nussbaum spoke with 32 potential Class Members—three of whom were Opt-In Plaintiffs with whom Mr. Nussbaum initiated contact and spoke regularly, 22

---

[4] At the Hearing, Mr. Nussbaum asserted that there were 65 Authorized Claimants, one more than the Claims Administrator reported. (Compare ECF No. 103 at 4 with ECF No. 98 ¶ 6). We presume Mr. Nussbaum inadvertently misstated the number and take the Claims Administrator's number as correct. The discrepancy is not material to our analysis.

of whom initiated contact with Mr. Nussbaum, and seven of whom Mr. Nussbaum contacted. (Id. ¶¶ 8-10). Mr. Nussbaum also tried contacting other potential Class Members who did not pick up or did not return his voicemails. (Id. ¶ 13). Mr. Nussbaum attests that he "did not pressure or coerce any of the 32 Class Members with whom [he] communicated to join the case as Claimants." (Id. ¶ 12). Mr. Nussbaum's billing records reflect 17 hours for "claims administration" between June 25, 2025 and July 3, 2025. (ECF Nos. 97-3 at 16; 99 at 3).[5]

Between June 30, 2025 and July 8, 2025, 24 Class Members submitted claim forms, representing 9% of the Class and $92,166.19 in claim value. (ECF No. 99 at 3). The total value of the claims for the 64 Class Members who submitted their claim forms is $287,978.66. (Id.; ECF No. 103 at 4, 6). Defendants do not dispute the validity or value of the Class Members' claims. (ECF No. 99 at 3).

**D.  The Final Approval Motion**

On July 10, 2025, Plaintiff filed the Final Approval Motion, accompanied by a memorandum of law, declaration from Mr. Nussbaum and exhibits, and a declaration from the Claims Administrator. (ECF Nos. 95; 96; 97; 97-1–97-4; 98). As part of the Final Approval Motion, Plaintiff asked the Court to approve an award of $250,000.00 in attorneys' fees to Class Counsel. (ECF No. 97-2 ¶ 6 (the "Requested Fees")). The billing records accompanying the Final Approval Motion reflect that three attorneys, at a rate of $500 per hour, recorded a total of 196.1 hours,

---

[5] The Court notes that Defendants claim Mr. Nussbaum "spent 15.5 hours between June 26, 2025, and July 6, 2025, performing 'claims administration.'" (ECF No. 99 at 3). Class Counsel's billing records (ECF No. 97-3 at 16) indicate that the date range during which Mr. Nussbaum performed "claims administration" is June 25, 2025 through July 3, 2025 and that the total is 17 hours. (ECF No. 97-3 at 16). The Court takes Class Counsel's billing records as correct, but the discrepancy is not material to our analysis.

5

and paralegals and administrative assistants, at a rate of $125 per hour, recorded a total of 50.6 hours on this matter, for a total of $104,375.00. (ECF No. 97 ¶ 45).

On July 15, 2025, Defendants submitted a letter stating their opposition to the portion of the Final Approval Motion "that seeks approval of attorneys['] fees" and seeking "appropriate relief" to remedy Class Counsel's "misconduct" in "contacting Class Members directly to inform them about the settlement and encourage them to submit their claim forms." (ECF No. 99 at 1–2 (the "Opposition")). Defendants inferred that, because as of late June 2025, the value of the claims submitted—$195,812.47—was less than the Requested Fees, "Class Counsel needed to ensure that the value of the Class Members' claims sufficiently increased before" the Bar Date to justify the Requested Fees. (Id. at 3). Defendants contended that Class Counsel's conduct "facilitated the submission of claim forms in a manner inconsistent with neutral claims administration" and asked the Court to reduce the attorneys' fee award to Class Counsel by $92,166.19—"the amount attributable to the claims that were submitted because of Class Counsel's misconduct"—and award Defendants reasonable attorneys' fees incurred in connection with submitting the Opposition. (Id. at 3).

**E.  The Fairness Hearing**

On July 17, 2025, the Court held the Fairness Hearing. (ECF No. 103). Referring to the inquiry under FLSA § 216(b) and Federal Rule of Civil Procedure 23, the Court found and ordered that:

(1) It had jurisdiction over the subject matter of this action, the Named Plaintiff, the Opt-In Plaintiffs, the Class Members, and Defendants.
(2) The Agreement was the product of arms'-length negotiations between experienced counsel.
(3) The Agreement, including releases and all other terms, is fair, reasonable, and adequate to the parties and the Class Members.

(4) The Settling Parties are to perform their obligations under the Agreement in good faith.
(5) The NYLL Class, for settlement purposes only, satisfies the applicable standard for class certification under Federal Rule of Civil Procedure 23.
(6) The FLSA Class satisfies the applicable standard for collective certification under FLSA § 216(b).
(7) The procedures for notifying Class Members about the Agreement, including the Notice and related documents, constituted the best notice practicable under the circumstances to all Class Members and that the Notice fully satisfied all the requirements of due process and provided adequate, due, sufficient, and valid notice.
(8) The service award of $10,000 to the Named Plaintiff, to Gina Marin, was appropriate.
(9) The Claims Administrator was to be paid its reasonable costs in administering the Agreement, subject to Class Counsel's review of invoices, to be paid out of the Net Settlement Fund.
(10) The Court reserved continuing and exclusive jurisdiction over the parties to continue to supervise, construe, and enforce the Agreement in accordance with its terms.

(ECF No. 103 at 46-48). The Court heard arguments from the parties regarding Defendants' Opposition but reserved findings on Class Counsel's request for attorneys' fees and litigation costs pending receipt of supplemental submissions from the parties. (Id. at 48; see ECF No. 102).

**F. Post-Fairness Hearing Submissions**

On July 23, 2025, Marin submitted a letter-brief and a second declaration from Mr. Nussbaum, who attested to his communications with Class Members described above. (ECF Nos. 105; 105-1; see § II.C., supra). Marin also provided receipts supporting Class Counsel's request for reimbursement of litigation costs. (ECF No. 105-2). On August 1, 2025, Defendants submitted a letter-brief reasserting their objections to Mr. Nussbaum's communications with absent Class Members but lowering to $26,446.66 (from $92,166.19) the amount by which they contend Class Counsel's fee award should be reduced. (ECF No. 110 at 4; see ECF No. 99 at 3).

### III. DISCUSSION

#### A. Legal Standard

##### 1. Communication with Class Members

Defendants do not inform us of the standard by which they ask us to evaluate their complaints about Class Counsel's communications with absent Class Members. (See ECF Nos. 99; 101; 110). We have already set forth the standard for notice of a class action settlement in Marin. 2025 WL 893731, at *10. In addition, we note that "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981); see Erhardt v. Prudential Grp. Inc., 629 F.2d 843, 846 (2d Cir. 1980) ("It is the responsibility of the court . . . to safeguard [class members] from unauthorized, misleading communications from the parties or their counsel."); In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., No. 05 MD 1720 (JG), 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) ("In a class action litigation, the Court bears the responsibility to protect the class and preserve the integrity of the process, and Rule 23(d) gives the Court the discretion to meet that responsibility."). Thus, Rule 23 permits a district court to impose conditions on the parties and their counsel in a class action. Fed. R. Civ. P. 23(d)(1)(C).

Notwithstanding this discretion, "judicially imposed restrictions on communications by class counsel with potential class members must be based on a 'clear record' demonstrating 'a likelihood of serious abuses.'" Gordon v. Kaleida Health, 737 F. Supp. 2d 91, 96 (W.D.N.Y. 2010) (quoting Gulf Oil Co., 452 U.S. at 101). In Gulf Oil, the United States Supreme Court held that a district court's order restricting class counsel's communication was an abuse of discretion in the

absence of specific findings of abuse by class counsel.  Gulf Oil Co., 452 U.S. at 101 (explaining that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties").  Other "[e]xamples of abusive conduct by parties to a class action in communicating with prospective class members that may be subject to judicial remedies include providing false, misleading, or intimidating information, or other misconduct such as concealing material information or conducting communications with a represented party." Gordon, 737 F. Supp. 2d at 96–97 (collecting cases).  Here, Defendants bear the burden to establish that Class Counsel have engaged in abusive or unethical conduct.  See Gulf Oil, 452 U.S. at 102; accord, Gordon, 737 F. Supp. 2d at 97.

### 2. Court Approval of Class Action Settlements

Because Defendants' Opposition amounts to a challenge, in part, to the fairness of the Agreement, it is important that we set forth the standard by which Rule 23, as interpreted by the Second Circuit, requires us to evaluate the Agreement.  (ECF Nos. 99; 101; 110).  A district court may approve a class action settlement "only after a hearing on and only on finding that it is fair, reasonable, and adequate after considering whether:

>  (A) the class representatives and class counsel have adequately represented the class;
>  (B) the proposal was negotiated at arm's length;
>  (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
>  (D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2). "The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." Moses v. N.Y. Times Co., 79 F.4th 235, 242 (2d Cir. 2023) (citing Fed. R. Civ. P. 23(e)(2) adv. cmte. n. to 2018 amend.).[6]

As the Second Circuit explained in Moses, there is no "presumption of fairness to proposed settlements arising from an arms-length agreement." Id. at 243. Rather, "[c]ourts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account—among other substantive considerations stated in the rule—the proposed attorneys' fees[.]" Id. The four factors in Rule 23(e)(2) do not displace the "traditional Grinnell factors, which remain a useful framework for considering the substantive fairness of a settlement." Id.[7] Although the Grinnell factors and the Rule 23(e)(2) factors "largely overlap," the Second Circuit has recognized that Rule 23(e)(2) "now requires courts to expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." Id. at 244 (citing Fed. R. Civ. P. 23(e)(2)(C)–(D)). The implication of the Second Circuit's interpretation of Rule 23(e)(2) in Moses is that "when reviewing the substantive fairness of a proposed settlement, the district court is required to review both the

---

[6] In 2018, Congress approved the revision of Rule 23(e)(2) to include the four factors. See Moses, 79 F.4th at 242.

[7] The nine factors under City of Detroit v. Grinnell Corp., are: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." 495 F.2d 448, 462-63 (2d Cir. 1974).

terms of the settlement and any fee award encompassed in a settlement agreement in tandem." Moses, 79 F.4th at 244.[8]

With respect to the adequacy of relief, Rule 23(e)(2) requires the Court to consider, inter alia, "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). The fees awarded in a class-action settlement "may not exceed what is 'reasonable' under the circumstances." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000). The "trend in the Second Circuit" considers fee requests "using the 'percentage of the fund' approach, which 'assigns a proportion of the common settlement fund toward payment of attorneys' fees.'" Hart v. BHH, LLC, No. 15-CV-4804 (WHP), 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) (quoting Dial Corp. v. News Corp., 317 F.R.D. 426, 433 (S.D.N.Y. 2016)). To determine reasonableness under this approach, courts "consider[] the six Goldberger factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Dial Corp., 317 F.R.D. at 433 (citing Goldberger, 209 F.3d at 50). As a cross-check on reasonableness, courts often compare the proportionate fee amount to the lodestar multiplier, which should be a reasonable multiple of the total number of hours

---

[8] The Second Circuit recently clarified that Moses' "tandem analysis of class relief and attorney's fees requires courts to compare the proportion of total recovery allocated to the class to the proportion of total recovery allocated to class counsel." Kurtz v. Kimberly-Clark Corp., 142 F.4th 112, 115 (2d Cir. 2025). Neither Moses nor Kurtz, however, involved claims under the FLSA, which, the Second Circuit has emphasized, does not "impos[e] a proportionality limit on recoverable attorneys' fees." Fisher v. SD Protection Inc., 948 F.3d 593, 603 (2d Cir. 2020) ("In most FLSA cases, it does not make sense to limit fees to 33% of the total settlement."); see id. at 604 (holding "that a fee may [not] be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation"). Accordingly, given the holding in Fisher, we do not read Kurtz as requiring district courts, in evaluating the fairness of an FLSA settlement, to "examine how recovery is apportioned between class members and class counsel[.]" Kurtz, 142 F.4th at 118.

billed at a standard hourly rate.  See Goldberger, 209 F.3d at 50.  In "most" FLSA cases, "a multiplier near 2 should . . . be sufficient compensation for the risk associated with contingent fees[.]"  Lazo v. Kim's Nails at York Ave., Inc., No. 17 Civ. 3302 (AJN), 2019 WL 95638, at *3 (S.D.N.Y. Jan. 2, 2019) (collecting cases and approving FLSA settlement on condition that attorneys' fees were reduced to lodestar multiplier of two); see Velazquez Cuautle v. Hudson Market 303 LLC, No. 18 Civ. 2968 (OTW), 2019 WL 5569603, at *2 (S.D.N.Y. Oct. 29, 2019) (same).

### B. Application

Although Defendants' Opposition focuses solely on Class Counsel's Requested Fees (ECF Nos. 99; 101; 110), for completeness we consider each of the Rule 23(e)(2) factors that govern whether the Agreement is fair, reasonable, and adequate.

#### 1. Procedural Fairness

As noted above, given Rule 23(e)(2)'s "codification of the core factors that should guide a court's approval of a proposed settlement," courts may no longer apply "a presumption of fairness to a settlement agreement based on its negotiation at arm's length."  Moses, 79 F.4th at 243.  To evaluate the procedural fairness of the Agreement, we must consider whether "the class representatives and class counsel have adequately represented the class" and whether the Agreement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(A)–(B).  Defendants do not discuss, let alone dispute, either factor.  (See ECF Nos. 99; 101; 110).

First, as part of the Rule 23(a) analysis, we have already found Marin and Class Counsel adequate.  See Marin, 2025 WL 893731, at *6–7.  See Schutter v. Tarena Int'l, Inc., No. 21 Civ. 3502 (PKC) (RML), 2024 WL 4118465, at *7 (E.D.N.Y. Sept. 9, 2024) (in analyzing procedural fairness under Rule 23(e)(2)(A), incorporating adequacy analysis under Rule 23(a)).

Second, we "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations." Id. (citation modified).  As we previously noted, the parties reached the Agreement "[w]ith the assistance of a private mediator over several weeks of negotiations[.]" Marin, 2025 WL 893731, at *2; see Schutter, 2024 WL 4118465, at *7 (finding that settlement negotiations that took place over about a month with the assistance of a mediator reflected arm's-length negotiations under Rule 23(e)(2)(B)).

Accordingly, we conclude that the procedural fairness requirements under Rule 23(e)(2)(A)–(B) have been satisfied.

### 2. Substantive Fairness

In evaluating the substantive fairness of the Agreement, we consider the "two core factors" under Rule 23(e)(2)(C)–(D): "the adequacy of relief provided to a class and the equitable treatment of class members." Moses, 79 F.4th at 244.  In doing so, we consider "in tandem" the terms of the Agreement with the Requested Fees. Id.

#### a. Adequacy of Class Relief (Rule 23(e)(2)(C))

Determining whether "the relief provided to the class is adequate" under Rule 23(e)(2)(C) requires the Court to "tak[e] into account . . . the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii).  Defendants' argument is essentially that, by virtue of Mr. Nussbaum's allegedly improper communications with absent Class Members, the Requested Fees are unreasonable.  (ECF Nos. 99; 101; 110).  We disagree for three reasons.

First, Defendants do not argue, let alone establish, as is their burden, see Gulf Oil Co., 452 U.S. at 102, that Mr. Nussbaum's communications with absent Class Members were abusive or unethical.  See Gordon, 737 F. Supp. 2d at 97 (declining to restrict class counsel's

13

communications with absent class members where defendants failed to show that counsel "has engaged or threatens to engage in abusive or unethical conduct"). Defendants offer no evidence that Mr. Nussbaum made any misrepresentations about the Agreement to the 32 Class Members with whom he communicated or provided any information materially different than in the Court-approved Notice. Aside from "suspicion" based on changes in average claim value (ECF No. 110 at 3), Defendants offer no evidence to doubt Mr. Nussbaum's attestation that he "did not pressure or coerce" any of the Class Members with whom he communicated. (ECF No. 105-1 ¶ 12). Indeed, Mr. Nussbaum's outreach was not entirely successful, as one-quarter of the Class Members he contacted still did not submit a Claim Form and the total value of the Authorized Claimants' claims is less than half of the Maximum Settlement Amount. (See ECF Nos. 97-1 § 1.25; 99 at 3; 103 at 4, 6; 105-1 ¶¶ 8–10). The circumstances here are therefore distinguishable from those in the principal case on which Defendants rely, Panora v. Deenora Corp., in which plaintiffs' counsel changed the notice of settlement and claim form without prior notice to defendants or court approval, and then sent out a notice that "deviate[d] from the version approved by the Court[.]" 521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021). (See ECF Nos. 99 at 2–3; 110 at 2–3). Defendants also concede the validity and value of the Class Members' claims and acknowledge that no Class Members opted out (ECF No. 99 at 1 n.3, 3), so, unlike another case on which Defendants rely (ECF No. 110 at 4), there is no evidence that Class Counsel was acting at all for the benefit of some Class Members at the expense of others. Cf. Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 311 (E.D.N.Y. 2015) (deducting from fee award hours that plaintiffs' counsel expended drafting objections to settlement and noting that he had "the unbridled temerity to bill for hours spent

consulting on objections to the very settlement he negotiated on behalf of the class"). Accordingly, Defendants have not shown that Class Counsel's communications with absent members were abusive or unethical under Rule 23(d)(1)(A)–(B).

Second, to the extent that Defendants are suggesting that the Requested Fees—$250,000.00—are disproportionate in comparison to Class Members' actual recovery—$287,978.66—that argument is misplaced here. (ECF No. 110 at 2-3 ("If opposing counsel's fee remains unchanged, Class Members are effectively paying more, while receiving nothing additional in return[.]")). As noted above (see n.8, supra), the Second Circuit has expressly rejected the "imposi[tion] [of] a proportionality limit on [] recoverable attorneys' fees[]" in an FLSA settlement. Fisher, 948 F.3d at 605. As the court noted, "'[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery.'" Id. (quoting Millea v. Metro-N. R. Co., 658 F.3d 154, 169 (2d Cir. 2011)). Indeed, the Second Circuit has approved FLSA settlements even where the attorneys' fees award was multiples of the plaintiff's recovery. See, e.g., Hui Lu v. L&S Acupuncture, P.C., 649 F. App'x 1, 3 (2d Cir. 2016) (summary order) (affirming approval of $84,362.50 attorneys' fees award where plaintiff recovered $4,130.75); see also Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 9, 31 (S.D.N.Y. 2015) (awarding $48,366.50 in attorneys' fees where plaintiff recovered $7,500.00). Accordingly, the amount of the Requested Fees relative to Class Members' recovery is not a basis to reduce the award.

Finally, the Requested Fees compared to the lodestar of $104,375.00 amounts to a multiplier of 2.39. (ECF Nos. 97 ¶ 45; 97-2 ¶ 6).[9] When analyzing a multiplier, a court "should

---

[9] $250,000.00 / $104,375.00.

consider factors such as the attorney time expended, the complexity of the case, and the quality of the attorneys' representation." Velazquez Cuautle, 2019 WL 5569603, at *2 (citing McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 423 (2d Cir. 2010)). While the wage-and-hour claims in this action were straightforward and the parties stipulated to conditional certification of and notice to collective under the FLSA, the parties did engage in fact discovery and were preparing for depositions when the parties participated in a mediation and, shortly thereafter, reached a settlement in principle. (ECF No. 97 ¶¶ 8, 13–20; see ECF No. 39). In addition, the parties' efforts to finalize the Agreement, which is 21 pages long, negotiate the language of the Notice, and submit the Preliminary Approval Motion extended over approximately two months. See Marin, 2025 WL 893731, at *1–2. (See ECF Nos. 90-1; 90-2). Class Counsel has significant experience as lead or co-lead counsel in federal wage-and-hour actions and achieved for the Class Members a recovery that represents 100% of their unpaid minimum wages and tips, and 17% of their maximum possible recovery. (ECF No. 97 ¶¶ 23–25, 42, 44). Class Counsel remains obligated to oversee administration of the Agreement including distribution of payments to Authorized Claimants, meaning that the lodestar multiplier will likely decrease. (Id. ¶ 50; see ECF No. 97-1 § 5.1). Finally, at one-third of the Maximum Settlement Amount, the Requested Fees fall within the amount that courts in this District typically approve. See, e.g., Ortega v. Lee Salon 25 Corp., No. 21 Civ. 1844 (PAE) (OTW), 2022 WL 17418591, at *2 (S.D.N.Y. Nov. 30, 2022) (collecting cases).

Accordingly, the Requested Fees are reasonable. See Ali v. High-Steppers Corp., No. 24 Civ. 3938 (GS), 2025 WL 547798, at *1 (S.D.N.Y. Feb. 19, 2025) (finding plaintiffs' counsel's combined fee and costs award with a lodestar multiplier of 2.1 to be fair and reasonable, but

denying approval on other grounds); Clarke v. City of New York, No. 23 Civ. 2158 (GS), 2024 WL 2866984, at *3 (S.D.N.Y. June 5, 2024) (approving FLSA settlement including attorneys' fees award with lodestar multiplier of 2.98 where class counsel expected to expend additional time administering settlement, no plaintiffs objected, and settlement represented "substantial recovery . . . at a relatively early stage"); Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438–39 (S.D.N.Y. 2014) (approving FLSA settlement including attorneys' fees award with lodestar multiplier of 2.28).

For these reasons, we overrule Defendants' objections to the Requested Fees and find that the relief to Class Members is adequate under Rule 23(e)(2)(C).

### b. Equitable Treatment of Class Members (Rule 23(e)(2)(D))

Rule 23(e)(2)(D) requires the Court to consider whether the Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Relevant to this factor are "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Moses, 79 F.4th at 245 (quoting 2018 adv. cmte. n.)). In light of Moses, "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" 79 F.4th at 245 (quoting Fed. R. Civ. P. 23(e)(2)(D)). "[C]ourts evaluating the substantive fairness of a settlement must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." Moses, 79 F.4th at 245. "In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiff; (2) time and effort expended by the named plaintiff in assisting in the prosecution of

the litigation; and (3) the ultimate recovery in vindicating statutory rights." Guippone v. BH & S&B Holdings LLC, No. 09 Civ. 1029 (CM), 2016 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016).

As we explained in Marin, "the method of distribution appears reasonable." 2025 WL 893731, at *8.  Furthermore, the $10,000.00 service award to Marin is reasonable. (ECF No. 97-1 § 3.3).  She regularly communicated with Class Counsel during the litigation, produced documents and information, and participated in the mediation that ultimately resulted in the Agreement.  (ECF No. 97 ¶¶ 27–29).  The amount of the service award is also consistent with awards that other courts in this District have recently approved.  See Mikityuk v. Cision US Inc., No. 21 Civ. 510 (LJL), 2022 WL 3013107, at *6 (S.D.N.Y. July 29, 2022) (approving service awards of $10,000.00 for named plaintiffs); Emeterio v. A & P Rest. Corp., No. 20 Civ. 970 (KHP), 2022 WL 252065, at *3 (S.D.N.Y. Jan. 26, 2022) (approving service awards of $10,000.00 and $5,000.00, respectively, to named plaintiffs in recognition of the services they each rendered on behalf of the class).

\*   \*   \*

Accordingly, the Agreement is both procedurally and substantively fair under Rule 23(e)(2).

### IV. CONCLUSION

For the reasons set forth above, the Final Approval Motion is GRANTED.  By separate Order, the Court will enter judgment consistent with this Opinion & Order.

The Clerk of the Court is respectfully directed to close ECF No. 95.

Dated:      New York, New York
            August 8, 2025

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge